**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN A. PETRUCELLI,      ) | |
|      ) | |
| Plaintiff,      ) | |
|      ) | Civil Action No. 18-729 (CKK) |
| v.      ) | |
|      ) | |
| DEPARTMENT OF JUSTICE,      ) | |
|      ) | |
| Defendant.      ) | |
| _____) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS TO WHICH**
**THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 7(h), Defendants U.S. Department of Justice ("DOJ"), the Federal Bureau of Prisons ("BOP"), and the Executive Office for United States Attorneys ("EOUSA")[1] respectfully submit this separate Statement of Undisputed Material Facts.

**I.    <u>BOP</u>**

<u>BOP Systems of Records and Databases</u>

1.    A list of the major active systems of records of BOP concerning inmates is posted publicly at: https://www.justice.gov/opcl/doj-systems-records#BOP. The most frequently requested systems that render responsive documents are: the Prison Intelligence Record System ("Tru-Intel"), the Inmate Administrative Remedy Record System, the Inmate Central Records System, the Inmate Trust Fund Accounts and Commissary Record System, the Inmate Physical and Mental Health Record System, the Inmate Safety and Accident Compensation Record System, the Telephone Activity Records System, the Office of Internal Affairs Investigative Records, the Inmate Electronic Message Record System ("TRULINCS"), and the Federal Tort Claims Act Record System. In addition to these systems, BOP's SENTRY database is frequently the subject

_____

[1] BOP and EOUSA are subcomponents of DOJ.

of requests. SENTRY is an electronic media application that is comprised of data of activities within the multiple BOP published systems of records. Data is keyed into this database so that BOP employees can easily access certain inmate information nationwide. Therefore, while a SENTRY report is an agency record, it is merely an electronic abstract of other record systems. Declaration of Michelle Wirth ("Wirth Decl.") ¶ 4; Declaration of Lee-Anne Eichensehr ("Eichensehr Decl.") ¶ 7.

2.      The major active system of records concerning BOP staff are posted publicly at: https://www.opm.gov/information-management/privacy-policy/#url=Systems-of-Records-Notices. The most frequently requested systems that render responsive documents are: Personnel Investigation Records, General Personnel Records, Employee Performance File System Records, and Records of Adverse Actions. There are also programs and databases concerning staff that may render responsive documents. For example, BOP's nationwide Groupwise E-mail communication system for employees is a frequent target of requesters. Wirth Decl. ¶ 5; Eichensehr Decl. ¶ 8.

3.      The records systems described above are those most likely to render responsive records. BOP's Records and Information Management Office coordinates with the National Archives and Records Administration to manage the disposition of over 180 systems of records. Wirth Decl. ¶ 6; Eichensehr Decl. ¶ 9.

4.      The Inmate Central Records System is essentially an inmate's "Central File." In order to effectively manage the inmate population, BOP collects information regarding an inmate in a Central File that is maintained at the inmate's current or last institution of confinement if the inmate has been released from BOP custody. An inmate's Central File is divided into six sections: (1) Sentence Data/Detainers/Inmate Financial Responsibility Program; (2) Classification/Parole Material; (3) Mail, Visits, and Property, etc.; (4) Conduct, Work and Quarters Reports; (5) Release

Processing; and (6) General Correspondence. Wirth Decl. ¶ 7; Eichensehr Decl. ¶ 10. Although there is a structure to the files, there is no machine-searchable digital version of this record system. The central file is paper, and it can easily run to thousands of pages if an inmate serves a long sentence. Eichensehr Decl. ¶ 10.

5.      Documents maintained in an inmate's Central File include – but are not limited to – his Judgment and Commitment Order, Presentence Investigation Report, sentence computation documents, Transfer Orders (BP-399), Requests for Transfer, Requests for Management Variables, custody classifications, approved visiting lists, Discipline Hearing Officer Packets, and Inmate Requests to Staff. An inmate has the option to look at and make copies of the majority of his Central File materials. This procedure is not required by either the Freedom of Information Act ("FOIA") or the Privacy Act, but is in accordance with sound correctional practices. Only FOIA exempt materials are unavailable for this local review. A similar procedure allows inmates to access their medical records at the local level. Wirth Decl. ¶ 8; Eichensehr Decl. ¶¶ 11-12.

6.      BOP's policy on what is withheld from inmate access to the Central File favors transparency. "Discipline records, such as Unit Discipline Committee ("UDC") and Discipline Hearing Officer ("DHO") packets (including the UDC/DHO report, incident report, notice of hearing, list of inmate rights at UDC/DHO hearing, notice of placement in Administrative Detention, and investigative memoranda), shall be maintained together in the Privacy Folder only if a portion of the investigation or other discipline record contains non-disclosable materials. Copies of all releasable documents shall be placed together in the disclosable section of the Inmate Central File." Wirth Decl. ¶ 9; Eichensehr Decl. ¶ 13.

7.      An inmate's central file is generally maintained at the inmate's current institution. The files are stored alphabetically by inmate name in secure fire-proof cabinets in the unit team

offices of the housing unit where the inmate lives. BOP staff who have access to these files are the unit manager, the case manager, the correctional counselor, and the unit secretary. During all times relevant to Plaintiff's Second Amended Complaint, Plaintiff has been housed at FCI Allenwood in White Deer, Pennsylvania. Eichensehr Decl. ¶ 14.

### A.    Plaintiff's Complaint (ECF No. 1) and Supplemental Memorandum (ECF No. 7)

Administrative History

8.    On March 7, 2016, BOP received Plaintiff's FOIA request that was logged as request number 2016-03369. Plaintiff requested "[a]ny and all information in which your agency ma[y] have records of my name John Petrucelli which may be mixed up as part of a routine investigation with DOJ employees." Wirth Decl. ¶ 10 and Ex. A.

9.    On August 8, 2016, BOP released to Plaintiff 245 pages of responsive records. Nine pages were released in full, 87 pages were released in part, and 149 pages were withheld in full. These records were from the FOIA-Exempt Privacy Folder of Plaintiff's Central File. BOP made withholdings pursuant to FOIA Exemptions 6, 7(C), and 7(F). *Id.* and Ex. B.

10.    On December 8, 2016, following discussions between the Office of Information Policy ("OIP") and BOP, BOP released the full remainder of the records in Plaintiff's Central File, which amounted to 261 pages of responsive records. This supplemental release was performed under request number 2017-00843. Fifty of these pages were released in full, 193 pages were released in part, and 18 pages were withheld in full pursuant to Exemptions 6, 7(C), and 7(F). *Id.* and Ex. C.

11.    In a letter dated January 18, 2017, OIP granted administrative relief on Plaintiff's appeal of BOP Request number 2016-03369. OIP remanded the request "for further processing of one page of responsive records." OIP otherwise affirmed BOP's application of the exemptions and

further determined that BOP had conducted an adequate search following the supplemental release performed under request number 2017-00843. *Id.* and Ex. D.

12.     In response to the remand, BOP opened request number 2017-02392, reprocessed the one page of records in accordance with the remand, and released the record to Plaintiff in a letter dated January 27, 2017. Exempt information was withheld pursuant to Exemptions 6 and 7(C). *Id.* and Ex. E.

13.     In a letter dated April 6, 2017, OIP again granted administrative relief, but this time regarding the supplemental release under request number 2017-00843. OIP remanded the request "for further processing of two responsive records." OIP otherwise affirmed BOP's application of exemptions and determined that BOP had conducted an adequate, reasonable search. *Id.* and Ex. F.

14.     In a letter dated June 11, 2018, under request number 2017-03853, BOP located, reprocessed, and released the pages remanded by OIP. BOP noted that the roughly 14-month delay in responding to the remand was because of an administrative error. *Id.* and Ex. G.

15.     On September 26, 2018, non-exempt or segregable material was released on 47 pages of the total already released to Plaintiff in 2016-03369, 2017-00843, 2017-02392, and 2017-03853. Following this release, all responsive, non-exempt, and segregable information was released to Plaintiff. *Id.* and Exs. H and I.

Plaintiff's Complaint and Supplemental Complaint

16.     If Plaintiff's Complaint (ECF No. 1) and Supplemental Complaint (ECF No. 7) are liberally construed, they allege that: (1) BOP improperly construed Plaintiff's search terms; (2) BOP failed to comply with an OIP remand to disclose two pages; (3) BOP improperly applied the FOIA exemptions; and (4) BOP's search was inadequate. Wirth Decl. ¶ 12.

17.     Regarding the search terms, Plaintiff contends that BOP improperly "changed the search request from 'Any DOJ employee who could be mixed up in the investigation with John Petrucelli,' to 'All information about John Petrucelli.'" Compl. ¶ 11. As noted above, the actual request states, "[a]ny and all information in which your agency ma[y] have records of my name John Petrucelli which may be mixed up as part of a routine investigation with DOJ employees." BOP liberally construes request language, particularly when a requester is proceeding *pro se*. Wirth Decl. ¶ 13 and Ex. A.

18.     When an inmate requests records about himself or lists his name as the sole search term, it is the practice of BOP to construe this as a request for that inmate's Central File, including the FOIA-exempt Privacy Folder. This is because the Central File is the comprehensive record that is most likely to render responsive documents. The August 8, 2016, BOP initial response letter describes the search in terms that match Plaintiff's request language. *Id.* ¶ 14 and Ex. B. OIP used the shorthand phrases "request for access to records concerning yourself" and "certain information concerning yourself" in appeal letters. *See id.* and Exs. D, F, and H. This may be the source of Plaintiff's allegation. It is submitted that BOP did not improperly narrow the scope of Plaintiff's request language. This conclusion is supported by a statement from Plaintiff's Supplemental Complaint, which states, "Plaintiff Is A Pro-Se Litigant Who Is Only Trying To Obtain Information *About Himself* That He Believes Has Been Improperly Withheld." Supp. Compl. at 2-3 (emphasis added); Wirth Decl. ¶ 14. In the absence of any other parameters, BOP's search of Plaintiff's Central File for records concerning "the name John Petrucelli" was reasonably calculated to produce responsive records. Wirth Decl. ¶ 14.

BOP's Delayed Compliance with a Remand

19.     Plaintiff is incorrect in his claim that BOP failed to disclose two pages of records in response to an OIP remand. The release was late. At the time Plaintiff filed his Complaint, BOP had not complied with the OIP remand in case number DOJ-AP-2017-001564. Wirth Decl. ¶ 15 and Ex. F. The remand was not acted upon promptly because of an administrative error. Nevertheless, BOP corrected the error in a letter dated June 11, 2018, under request number 2017-03853. BOP located and released the pages remanded by OIP with the relevant redactions removed. *Id.* and Ex. G. Justification for the exemptions used following remand are provided in Exhibit H at 152-53.

Search and Processing

20.     An inmate's Central File is in paper format, and it is generally maintained at the inmate's current institution. The files are stored alphabetically by inmate name in secure fireproof cabinets in the unit team offices of the housing unit where the inmate lives. During this litigation, Plaintiff has been housed at FCI Allenwood in White Deer, Pennsylvania. Wirth Decl. ¶ 16.

21.     The Northeast Regional Office ("NERO") received Plaintiff's FOIA request on March 24, 2016, and on the same day forwarded, by e-mail, a request for documents to FCI Allenwood. In that request, Plaintiff asked for "[a]ny and all information in which your agency ma[y] have records of my name John Petrucelli which may be mixed up as part of a routine investigation with DOJ employees." *Id.* ¶ 17 and Ex. A.

22.     BOP personnel opened the e-mail, read the request, and determined that the request should be construed as a request for the Privacy Folder (also known as the FOIA-Exempt Section) of Plaintiff's Central File. This determination was based on the fact that Plaintiff could review the remainder of the Central File in unredacted form through local review procedures. *Id.* ¶ 18.

23.     On March 24, 2016, BOP sent the request for documents to the Unit Manager to obtain the FOIA-exempt records from Plaintiff's Central File. The Unit Secretary for Plaintiff's unit conducted the search for Plaintiff's file. Upon reviewing Plaintiff's Central File, the Secretary located 245 pages of potentially responsive documents. These records were forwarded to a BOP FOIA Paralegal Specialist on March 28, 2016. On July 19, 2016, BOP began processing the responsive documents. On or about August 8, 2016, BOP sent a determination letter to Plaintiff. The letter stated BOP's initial conclusion that nine pages were appropriate for release in full; 87 pages were appropriate for release in part, and 149 pages were withheld in their entirety. *Id.* ¶ 19 and Ex. B.

24.     On November 4, 2016, OIP directed that all sections of Plaintiff's Central File be searched and processed, not just the FOIA Exempt section. On November 8, 2016, BOP sent a request for documents to the Case Manager to obtain Plaintiff's remaining Central File records. The Case Manager for Plaintiff's unit conducted the search for Plaintiff's file. Upon reviewing Plaintiff's Central File, the Case Manager located 261 pages of potentially responsive documents. These records were forwarded to the FOIA Paralegal Specialist on November 8, 2016. On November 15, 2016, BOP began processing the responsive documents. On or about December 8, 2016, BOP sent a determination letter to Plaintiff stating BOP's conclusion that 50 pages were appropriate to release in full; 193 pages were appropriate for release in part, and 18 pages were withheld in their entirety. *Id.* ¶ 20 and Ex. C.

25.     In a remand letter dated January 18, 2017, OIP ordered BOP to reprocess one page withheld in full to be withheld only in part to release Plaintiff's full name. OIP otherwise affirmed BOP's action on this request. *Id.* ¶ 21 and Ex. D.

26.    On January 26, 2017, another processor began processing the remanded document. On or about January 27, 2017, BOP sent a determination letter to Plaintiff stating that one page was appropriate for release in part. *Id.* ¶ 22 and Ex. E. This document was further segregated in anticipation of litigation. *Id.* and Exs. H and I.

27.    On April 6, 2017, OIP remanded BOP request number 2017-00843 for further processing of two pages of responsive records. Otherwise, OIP affirmed BOP's action on 2017-00843. *Id.* ¶ 23 and Ex. F.

28.    On April 10, 2017, BOP began processing the two pages of remanded documents and prepared the determination letter. It was sent to NERO for review the same day. Because of an administrative error, the two pages were not released to Plaintiff until June 11, 2018, after the filing of this lawsuit. *Id.* ¶ 24 and Ex. G.

29.    BOP conducted an adequate search once Plaintiff's entire Central File was gathered for processing. The initial search, under 2016-03369, for only the FOIA-exempt Privacy Folder from the Central File was admittedly too narrow and therefore inadequate. *See id.* ¶ 25 and Ex. B. Nonetheless, the error was cured when BOP made a supplemental release of the remainder of Plaintiff's Central File in 2017-00843. *Id.* and Ex. C. At that point, with Plaintiff's search parameters, there was no other location to be searched that was reasonably likely to render responsive documents. Wirth Decl. ¶ 25.

**B.    Plaintiff's Second Amended Complaint (ECF No. 17)**

Exhibits and Administrative History

30.    On August 10, 2018, BOP received Plaintiff's FOIA request that was logged as request number 2018—6810 ("FCI Manchester Matters"). Plaintiff requested records from 2010-2012, a time when he was incarcerated at FCI Manchester. BOP searched but found no records

responsive to this four-part request. BOP mailed Plaintiff a final determination letter on September 5, 2018. Eichensehr Decl. ¶ 5 and Ex. A.

31.     Also on August 10, 2018, BOP received from Plaintiff FOIA request number 2018-06812 ("2002 New York Fight"). Plaintiff asked for records concerning an altercation he was involved in at MCC New York in 2002. On May 9, 2019, BOP mailed Plaintiff a final determination letter that released five pages of responsive documents. One page was released in full, and four pages were redacted in part. *Id.* and Ex. B.

32.     On August 13, 2018, Plaintiff filed BOP FOIA request number 2018-06820 ("Canaan to Manchester Transfer"). He sought any and all records concerning his transfer from USP Canaan to FCI Manchester in June 2010. On December 10, 2018, BOP released two pages of documents that were redacted in part. *Id.* and Ex. C.

33.     On August 17, 2018, Plaintiff filed request number 2018-06906 ("Manchester to Allenwood Transfer"), seeking any and all records concerning his transfer from FCI Manchester to FCI Allenwood in May 2012. Plaintiff also asked for records that would show why he was not transferred to FCI McKean. On October 11, 2018, BOP released two pages of records that were redacted in part. On November 9, 2018, Plaintiff filed an appeal with OIP. In the wake of discussions between OIP and NERO FOIA, OIP remanded the request for further searching. BOP found an additional eight pages of responsive records. Under new request number 2019-03001, three of these pages were released in full, and five pages were released in part. *Id.* and Ex. D.

34.     On August 27, 2018, Plaintiff filed request number 2018-07118 ("2011 FOIA Denial"), seeking a copy of a final FOIA determination letter that he believed he received from the Mid-Atlantic Regional Office ("MARO") of BOP. On August 31, 2018, BOP released one page in full, a letter from a 2010 NERO FOIA request. *Id.* and Ex. E.

35.     Also on August 27, 2018, Plaintiff filed FOIA request number 2018-07116 ("2002 Intake Screening"), seeking records concerning a January 2002 intake screening at MDC Brooklyn. On April 5, 2019, BOP released three pages of records, one in full and two in part. *Id.* and Ex. F.

36.     On August 27, 2018, Plaintiff filed FOIA request number 2018-07115 ("Brooklyn Cell Assignment"), seeking records regarding a cell or cells he spent two or three days in at MDC Brooklyn. On September 24, 2018, BOP released two partially redacted pages to Plaintiff. *Id.* and Ex. G.

Search and Processing

1.      *FCI Manchester Matters, 2018-06810*

37.     The NERO received the FCI Manchester Matters request on August 15, 2018, and on the same date forwarded a request for documents to FCI Allenwood and FCI Manchester. In the request, Plaintiff sought "[a]ny and all information about himself where he and some employees of DOJ could be mixed up in an investigation." *Id.*, Ex. A. Plaintiff specifically stated that he was housed in Manchester, Kentucky in or about 2010-2012, where he had difficulty with staff and believed he was being targeted. Within those parameters, Plaintiff asked for: (1) information concerning a charge that he had a weapon in his cell and was given extra duty; (2) information concerning his family's contact with BOP's Office of Internal Affairs ("OIA"); (3) records concerning a complaint he filed that resulted in a meeting with SIS and a transfer; and (4) records of steps he took pursuant to BOP Program Statement 1210.21, Boards of Inquiry and Inquiry Teams (3/9/2000). *Id.* ¶ 16.

38.     On August 15, 2018, the Warden's Secretary at FCI Manchester reported that there were no responsive records located at FCI Manchester. On August 27, 2018, the FCI Allenwood

case manager reported that no records were located in the Central File. The case manager determined that Plaintiff was never sanctioned by the unit discipline committee or the disciplinary hearing officer. On August 29, 2018, an additional request was made to search for records in the SIS Department of FCI Manchester and to BOP's OIA in Washington, D.C. A "no records" response was received from OIA on August 29, 2018. A "no records" response was received on September 5, 2018, from FCI Manchester. The SIS department responded to the e-mail search query by reporting that a steel rod was found in Plaintiff's locker on February 12, 2012, but no incident report was written, and Plaintiff was never charged with possession of a weapon. At this point, BOP had searched all areas reasonably likely to render records responsive to Plaintiff's request concerning the FCI Manchester Matters. No other areas remained to be searched that were reasonably likely to render responsive documents. A final determination letter was sent to Plaintiff on September 5, 2018. *Id.* ¶ 17.

> 2.    *The 2002 New York Fight, 2018-06812*

39.    The NERO received Plaintiff's FOIA request on August 15, 2018, and on the same date forwarded, via e-mail, a request for documents to FCI Allenwood. In the request, Plaintiff sought "[a]ny and all information pertaining to himself being involved in an altercation with another inmate while being housed at MCC New York in 2002." Plaintiff stated that he had "filed some internal and administrative appeals with the incident[ ] while in the S.H.U. at MCC New York." *Id.* ¶ 18 and Ex. B.

40.    On August 20, 2018, BOP received a "no records" response from the case manager at FCI Allenwood, who indicated that Plaintiff was sanctioned in 2002 for "assault with serious injury." The case manager conducted a search of Plaintiff's central file and was unable to locate the incident report. *Id.* ¶ 19.

41.     On December 6, 2018, BOP e-mailed a request for documents to MCC New York and received no response. On April 5, 2019, BOP e-mailed MCC New York an additional request for documents. On the same date, MCC New York responded that they were searching institution files and archives for responsive records. MCC New York advised that the incident report regarding the fight and Plaintiff's administrative appeal of the incident should be in Plaintiff's central file. On April 9, 2019, BOP e-mailed the unit secretary at FCI Allenwood to ask her to conduct an additional search of the same central file for the 2002 incident report. BOP also asked her to search Plaintiff's cop-outs to staff to see if he had made any requests regarding the incident. On April 9, 2019, the unit secretary conducted a search of Plaintiff's central file and located the 2002 incident report and forwarded it to BOP. The secretary reported there were no cop-outs in the file that referenced the 2002 incident. *Id.* ¶ 20.

42.     On April 9, 2019, BOP e-mailed the NERO Administrative Remedy section to see if they could locate the BP-10 Plaintiff referenced in his request and is reflected in SENTRY. On April 10, 2019, NERO found the BP-10 and forwarded it to BOP for processing. *Id.* ¶ 21.

43.     On April 22, 2019, BOP reported to MCC New York that copies of the incident report and the BP-10 had been recovered. BOP determined that anything else that might be responsive would be irregular or exotic, *i.e.*, outside the normal systems-of-records expectations. BOP requested a status report on the New York search. On May 5, 2019, in response to a telephone query, MCC New York reported that a search of local SIS files recovered nothing responsive to the request. BOP requested MCC New York to stop their searches because it was not reasonably likely that an archive search would render responsive documents. The "internal" appeal, if it exists, would have been recovered during FCI Allenwood's April 9, 2019, search of Plaintiff's cop-outs. *Id.* ¶ 22.

44. At this point, BOP had searched all areas reasonably likely to render records responsive to Plaintiff's request concerning the 2002 New York Fight. No other areas remained to be searched that were reasonably likely to render responsive documents. Therefore, BOP began processing the records on May 7, 2019. On May 9, 2019, five pages of responsive records were released to Plaintiff. *Id.* ¶ 23.

3. *The Canaan to Manchester Transfer, 2018-06820*

45. The NERO received Plaintiff's FOIA request regarding this transfer on August 13, 2018. On the same date, BOP forwarded, via e-mail, a request for documents to FCI Allenwood. In the request, Plaintiff sought any and all information pertaining to his transfer to FCI Manchester. Plaintiff detailed his move from USP Canaan, the multiple holdover locations where he stayed on the transfer, the travel conditions, and a loss of his personal property. *Id.* ¶ 24 and Ex. C.

46. Plaintiff's case manager at FCI Allenwood conducted a search of Plaintiff's central file and located one page of responsive records, which was forwarded to BOP for processing on August 27, 2018. *Id.* ¶ 25.

47. On December 6, 2018, BOP sent a request for documents to the e-mailbox of the DSCC Attorney at Grand Prairie, Texas. On December 10, 2018, a DSCC paralegal located one page of responsive records, which was forwarded to BOP for processing. At this point, BOP had searched all areas reasonably likely to render records responsive to Plaintiff's request concerning the Canaan to Manchester Transfer. No other areas remained to be searched that were reasonably likely to render responsive documents. Therefore, BOP began processing the records. On December 11, 2018, the records were mailed to Plaintiff and the request was closed. *Id.* ¶ 26 and Ex. C.

4.      *The Manchester to Allenwood Transfer, 2018-06906*

48.     The NERO received Plaintiff's FOIA request regarding this transfer on August 17, 2018. On the same date, BOP sent a request for documents to FCI Allenwood. In the request, Plaintiff sought records about himself that involved his transfer in or about May 2012. Plaintiff detailed his experience, including his belief that he was being transferred to FCI McKean and that he lost property. *Id.* ¶ 27 and Ex. D.

49.     On August 27, 2018, the case manager at FCI Allenwood conducted a search of Plaintiff's central file. No record related to the transfer from FCI Manchester to FCI Allenwood was located in the central file. On September 20, 2018, BOP sent request for documents to the DSCC Attorney mailbox. On September 27, 2018, a DSCC paralegal located one responsive record, which was sent to BOP for processing. On October 5, 2018, BOP e-mailed the paralegal for additional information as to why Plaintiff's transfer destination was changed from FCI McKean to FCI Allenwood. On December 10, 2018, DSCC responded that Plaintiff's transfer destination was changed due to his CIMs assignment of separation, and advised that certain SENTRY transactions would render separation information. However, BOP did not search further because BOP concluded that the separation records were beyond the scope of the request and therefore nonresponsive. At this point, BOP had searched all areas reasonably likely to render records responsive to Plaintiff's request concerning the Manchester to Allenwood Transfer. It appeared that no other areas remained to be searched that were reasonably likely to render responsive documents. Therefore, BOP processed the records and approved the release on October 25, 2018, which was mailed to Plaintiff. The request was closed on October 29, 2018. *Id.* ¶ 28.

50.     On February 13, 2019, OIP reported that Plaintiff was challenging the search as well as the FOIA exemptions applied to this request. BOP reviewed the request to determine if an

additional search should be conducted. On February 13, 2019, the records department at FCI

Allenwood produced a three-page SENTRY record concerning CIM Clearance and Separatee

Data. BOP also contacted Plaintiff's unit manager to request an additional search of the central file

for responsive transfer records that may have been missed in the initial search. The Unit Manager

conducted the search of the central file and located two property sheets. The first property sheet,

which was completed on July 31, 2012, showed that Plaintiff noted missing property. The notation

was lined through and initialed by staff. The second property sheet was dated August 16, 2012, in

which Plaintiff did not mention any missing property. *Id.* ¶ 29 and Ex. D.

51.     On March 26, 2019, the request was remanded for processing of the additional

documents. BOP processed the additional documents and assigned the request for review on March

29, 2019. The request was approved and the records were mailed to Plaintiff on April 2, 2019. *Id.*

¶ 30 and Ex. D.

   *5.     The 2011 FOIA Denial, 2018-07118*

52.     The NERO received Plaintiff's FOIA request on August 27, 2018, and on the same

date BOP conducted a search of 2011 FOIA requests using Plaintiff's name and register number

as the search criteria. In the request, Plaintiff sought a copy of the FOIA determination letter

pertaining to a copy of an administrative detention order from 2002. On August 30, 2018, BOP

located the requested record in one of its FOIA databases. At this point, BOP had searched all

areas reasonably likely to render records responsive to Plaintiff's request concerning the 2011

FOIA Denial Letter. No other areas remained to be searched that were reasonably likely to render

responsive documents. Therefore, BOP began processing the record, the request was approved,

and the records were sent to Plaintiff on August 31, 2018. *Id.* ¶ 31 and Ex. E.

6.     *The 2002 Intake Screening, 2018-07116*

53.     The NERO received Plaintiff's FOIA request on August 27, 2018, and on the same date forwarded, via e-mail, a request for documents to FCI Allenwood. In the request, Plaintiff sought a copy of the intake screening completed by a senior officer specialist in 2002. On September 7, 2018, a case manager at FCI Allenwood forwarded two pages of responsive records which were uploaded to the FOIA database. *Id.* ¶ 32 and Ex. F.

54.     On April 5, 2018, BOP conducted a new search and contacted Plaintiff's correctional counselor at FCI Allenwood and requested the counselor to conduct a second search of the central file for any records regarding the 2002 intake screening. The counselor conducted the search of the central file and located one page of additional records that BOP considered responsive to the request. At this point, BOP had searched all areas reasonably likely to render records responsive to Plaintiff's request concerning the 2002 Intake Screening. No other areas remained to be searched that were reasonably likely to render responsive documents. BOP processed three pages of records and referred the matter for secondary review on April 5, 2019. That same day, the release was approved and mailed to Plaintiff. *Id.* ¶ 33.

7.     *The 2002 Brooklyn Cell Assignment, 2018-07115*

55.     The NERO received this FOIA request on August 30, 2018, and on the same date BOP reviewed FOIA #2017-00843, which Plaintiff mentioned regarding the Brooklyn Cell Assignment. BOP conducted a SENTRY search of Plaintiff's history of housing quarters to determine which records could possibly be missing from FOIA #2017-00843. In the request, Plaintiff sought missing SHU records from two or three days in 2002 at MDC Brooklyn. *Id.* ¶ 34 and Ex. G.

56. On August 30, 2018, BOP sent a request for documents to FCI Allenwood to conduct a search of the central file for the SHU records that might be missing. On September 6, 2018, an FCI Allenwood case manager sent BOP two pages of records. At this point, BOP had searched all areas reasonably likely to render records responsive to Plaintiff's request concerning the Brooklyn Cell Assignment. No other areas remained to be searched that were reasonably likely to render responsive documents. Therefore, BOP processed the records, which were mailed to Plaintiff on September 24, 2018. *Id.* ¶ 35.

## II.   **EOUSA**

57. Plaintiff submitted a FOIA request dated October 27, 2016, to EOUSA seeking "untranscribed transcripts" and a tape recording of Plaintiff's criminal trial arraignment proceedings. Declaration of Natasha Hudgins ("Hudgins Decl.") ¶ 5 and Ex. A.

58. EOUSA received the FOIA request on or about November 8, 2017, and assigned it Request No. FOIA-2017-00301. EOUSA sent a letter to Plaintiff acknowledging the request on or about November 28, 2016. *Id.* ¶ 6 and Ex. B.

59. EOUSA subsequently sent a search request to the U.S. Attorney's Office for the Southern District of New York ("USAO-SDNY") to conduct a search for records responsive to Plaintiff's FOIA request. EOUSA determined that USAO-SDNY was the proper place to search based on Plaintiff's FOIA request. USAO-SDNY conducted a search for public records but did not locate any public records responsive to Plaintiff's FOIA request. *Id.* ¶ 7.

60. On or about November 16, 2017, EOUSA provided Plaintiff with a final determination response via first class mail. By that response, EOUSA issued a "no records" response. *Id.* ¶ 8 and Ex. C.

61.     The final response letter from EOUSA properly outlined Plaintiff's rights to appeal. Plaintiff appealed EOUSA's final response to DOJ's OIP in December 2017. *Id.* ¶ 9.

62.     On or about March 16, 2018, OIP made a final determination on Plaintiff's appeal, affirming EOUSA's final determination and search for records. *Id.* ¶ 10 and Ex. D.

63.     Plaintiff submitted a FOIA request dated January 21, 2018, to EOUSA. EOUSA received the request on or about February 2, 2018, and assigned it tracking number EOUSA-2018-002349. Plaintiff's FOIA request sought copies of payments made by Plaintiff as a result of his criminal trial. *Id.* ¶ 11 and Ex. E.

64.     On or about February 22, 2018, EOUSA sent Plaintiff a final response, acknowledging the request and notifying Plaintiff that a notarized signature or certification of identity under penalty of perjury was necessary to process Plaintiff's request. *Id.* ¶ 12 and Ex. F.

65.     Plaintiff submitted a FOIA request dated February 26, 2018, to EOUSA. EOUSA received the request on or about March 12, 2018, and assigned it tracking number EOUSA-2018-002868. Plaintiff referenced request number EOUSA-2018-002349 and attached the certification of identity form, so EOUSA interpreted the request as seeking the copies of payments listed in the previous request. *Id.* ¶ 13 and Ex. G.

66.     On or about April 19, 2018, EOUSA sent Plaintiff an acknowledgment letter and provided Plaintiff with the tracking number for his request. *Id.* ¶ 14 and Ex. H.

67.     On or about April 19, 2018, EOUSA sent a search request to USAO-SDNY to locate records responsive to Plaintiff's request. EOUSA received the search results from USAO-SDNY on or about July 2, 2018, with a two-page chart of payments made by Plaintiff. USAO-SDNY further explained to EOUSA that all official copies of records concerning the type of payments in question are under court control, and that the district does not generally maintain those

records outside of the information as shown in the record returned to EOUSA for processing. *Id.*
¶ 15.

68.      EOUSA processes requests on a "first-in-first-out" basis to the extent possible in
an effort to be fair to all requesters. Plaintiff's request was placed in line for processing based on
this policy. *Id.* ¶ 16.

69.      EOUSA sent the final response to Plaintiff on or about July 3, 2018, via USPS
certified mail, tracking number 7001-2510-0008-0110-6066. The response constituted a full
release of two pages of records that were maintained at USAO-SDNY at the time of the search,
and no redactions or exemptions to the release were claimed on the records. EOUSA further
informed Plaintiff that the official records concerning his payments were judicial records. *Id.* ¶ 17
and Ex. I.

70.      Following USAO-SDNY's search of its offices for agency records potentially
responsive to Plaintiff's FOIA request, EOUSA reviewed those records to determine whether they
were exempt from disclosure under FOIA. *Id.* ¶ 18.

71.      All responsive records related to Plaintiff's FOIA requests were processed to
achieve maximum disclosure consistent with the provisions of FOIA and former Attorney General
Eric Holder's March 19, 2009, memorandum to federal executive agencies that provided detailed
instructions to federal agencies regarding the application of FOIA. *Id.* ¶ 19.

72.     EOUSA has provided Plaintiff with all non-exempt records responsive to his FOIA request and has properly provided Plaintiff with all public records without redaction. *Id.* ¶ 22.


Dated: June 17, 2019                    Respectfully submitted,

                                        JESSIE K. LIU, D.C. Bar No. 472845
                                        United States Attorney

                                        DANIEL F. VAN HORN, D.C. Bar No. 924092
                                        Chief, Civil Division

                        By:      /s/   *Scott Leeson Sroka*
                                        SCOTT LEESON SROKA, Member of New York Bar
                                        Assistant United States Attorney
                                        555 Fourth Street, N.W.
                                        Washington, D.C. 20530
                                        (202) 252-7113
                                        Scott.Sroka@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN A. PETRUCELLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 18-729 (CKK) |
| v. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**[PROPOSED] ORDER**

UPON CONSIDERATION of the Defendants' Motion for Summary Judgment, the supporting memorandum, the exhibits and declarations thereto, as well as any opposition and reply, and for good cause shown, it is hereby

ORDERED that Defendants' motion is GRANTED, and it is

FURTHER ORDERED that judgment is awarded to Defendants as to all claims asserted in the above-captioned action.

SO ORDERED.


_____                    _____
Date                                                      United States District Judge