VAUGHN INDEX
PETRUCELLI V. DEP'T OF JUSTICE
Civil Action No. 1:18-cv-00729 (CKK)
Exhibit H to Declaration of Michelle Wirth

FOIA Request 2016-03369
The FOIA-Exempt Folder of the Central File; Released August 10, 2016
Bates pages 1-245
Released in Full (RIF), Disclosed in Part (DIP), Withheld in Part (WIP), Withheld in Full (WIF)

| Bates page # | Doc. # | Description | Treatment | Exemptions | Justification |
|---|---|---|---|---|---|
| 1 | 1 (one page) | CIM[1] Case Information Summary: Threat Assessment. August 7, 2015. | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this inmate-classification instrument concerning Mr. Petrucelli, (b)(6) and (b)(7)(C)—the privacy exemptions—were used to protect the identities of third-party inmates, BOP staff, and prosecutors named in the document.  The privacy exemptions protect information that would or could cause an unwarranted invasion of privacy.  Identification of public servants could conceivably subject them to harassment and annoyance in the conduct of their official duties and private lives.  Courts have held that third-party inmates have an interest in not appearing in law enforcement documents.  These third parties have legitimate privacy interests in not appearing in this law-enforcement record.  There is no countervailing public interest in revealing the names of these individuals.  Therefore, on the balance, privacy support redaction.<br><br>(b)(7)(F) was employed in addition to the privacy exemptions where information showed that particular individuals must be kept separate from Mr. Petrucelli. |

[1] "CIM" stands for Central Inmate Monitoring.  28 C.F.R. § 524.70.  It concerns inmates who present special circumstance and require a heightened level of management scrutiny for safety and security reasons.  The phrase "CMC status" is also used to identify a CIMs case.

| | | | | | See 28 C.F.R. § 542.72(f) (concerning separation information).  Exemption (7)(F) permits the protection of law enforcement information that could reasonably be expected to endanger the life or physical safety of any individual.  Disclosure of this information could threaten lives or the physical safety of these third parties.  Inmates are classified as separatees for various reasons (§ 542.72(f)); however, the bottom line is safety concerns require that they be kept apart. (b)(7)(F) was also employed in addition to the privacy exemptions to the names of two BOP staff members. The BOP and other law enforcement agencies routinely use Exemption (b)(7)(F) to protect the names and identifying information of law enforcement employees such as special agents, law enforcement officers, government employees, and local law enforcement officers.  Courts have held Exemption 7(F) protects BOP employees—and other law enforcement personnel—from having their names and identifying information released to avoid unnecessary exposure to physical attacks, threats, manipulation, or harassment.  Because the phrase "any individual" is broad, Exemption (7)(F) protection has also been extended to protect the names and identifying information of inmates, undercover agents, and medical personnel.<br><br>Finally, (b)(7)(F) was used twice to redact information that cannot be discussed publicly without revealing the nature of the information. |
|---|---|---|---|---|---|
| 2-7 | 2 (six pages) | AUSA Memorandum concerning separation of an inmate.  July 31, 2015. | WIP (pp. 1, 4, 6). | (b)(6), (b)(7)(C) | In this memorandum, an AUSA advises the BOP that a detainee she is prosecuting should be kept separate from several dozen other inmates or detainees.  The |

| | | | WIF (pp. 2-3, 5). | | privacy exemptions, (b)(6) and (b)(7)(C), were used to redact the name of the AUSA, the name and register number of third-party inmate needing protection, and the names and register numbers of several dozen "separatees."

The AUSA and the third-parties separatees have legitimate privacy interests in not appearing in this sensitive law-enforcement record.  There is no countervailing public interest in revealing identifying information regarding these individuals.

Because the document reveals an enormous number of related prosecutions and a request for separation, it is submitted that applying (b)(7)(F) also would have been appropriate.  The release of the names, register numbers, and institutions of the separatees could reasonably be expected to threaten the life or physical safety of the individuals listed because it raises an implication of cooperation with the Government.

Finally, on Bates page 2, the processor used the privacy exemptions to redact an internal group mailbox at the BOP's designations center.  Because no individual's identity or privacy is protected by the redaction, the BOP must concede that this was an inappropriate application of (b)(6) and (b)(7)(C).  A copy of this page was released to Mr. Petrucelli with the group mailbox unredacted. |
| 8 | 3 (one page) | CIM Case Information Summary:  Threat Assessment.  March 26, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this Case Summary, (b)(6) and (b)(7)(C) were used to protect the identities of third-party inmates, BOP staff, and prosecutors named in the document.  These third parties have legitimate privacy interests in not |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | having their identities disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these individuals.<br><br>On this record, (b)(7)(F) was only employed in addition to the privacy exemptions for two BOP staff members listed on the document.  As noted above, nondisclosure of identifying information is appropriate because working in a prison exposes staff to physical attacks, threats, compromise, and harassment.<br><br>It is submitted that (b)(7)(F) also applies to the identifying information regarding Mr. Petrucelli's separatees.  Disclosure of this information could threaten lives or the physical safety of these third party inmates who are separatees.<br><br>Finally, (b)(7)(F) was used twice to redact information that cannot be described publicly without revealing the nature of the information. |
| 9 | 4<br>(seven pages) | AUSA Memorandum concerning separation of an inmate.  March 17, 2014. | WIP (pp. 1, 7).  WIF (pp. 2-6). | (b)(6), (b)(7)(C), (b)(7)(F) | In this memorandum, an AUSA advises the BOP that a convicted inmate she prosecuted should be kept separate from several dozen other inmates or detainees.  (b)(6) and (b)(7)(C) were used to redact the name of the AUSA, the direct phone number of the AUSA, the name and register number of third-party inmate needing protection, and the names and register numbers of several dozen "separatees."<br><br>The AUSA and the third-parties separatees have legitimate privacy interest in not appearing in this sensitive law-enforcement record.  The withholding of the direct phone number was proper because release |

| | | | | | could conceivably subject her to harassment and annoyance in the conduct of her official duties and her private life.  There is no countervailing public interest in revealing identifying information regarding these individuals.

Because the document reveals an enormous number of related prosecutions and a request for separation, it is submitted that applying (b)(7)(F) also would have been appropriate.  The release of these names, register numbers, and institutions of the separatees could reasonably be expected to threaten the life or physical safety of the individuals listed because it raises an implication of cooperation with the Government. |
|---|---|---|---|---|---|
| 16 | 5 (one page) | AUSA e-mail to BOP designator concerning the continued separation of inmates.  March 6, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this e-mail, an AUSA provided information to continue the separation of Mr. Petrucelli and a third-party inmate.

(b)(6) and (b)(7)(C) were used to redact the AUSA's name, direct work e-mail address, work direct phone line and mobile phone line.  The privacy exemptions and (b)(7)(F) were used to excise the BOP designator's name, direct work e-mail address, and direct telephone number.

(b)(6), (b)(7)(C), and (b)(7)(F) were also invoked concerning the third party inmate's name and the reason he must remain separated from Mr. Petrucelli.

The identifying information of the AUSA, the BOP staff member, and the third-party separatee was properly redacted with the privacy exemptions.  All have legitimate privacy interests in not appearing in |

|  |  |  |  |  | this sensitive law-enforcement record.  The zone of privacy extends to the direct contact information of the AUSA and the BOP staff member.  They have an interest in not being harried as they conduct their official duties.  The separatee's privacy interest in his name and register number are entitled to the same protection.  There is no outweighing public benefit in releasing the information.<br><br>(b)(7)(F) was properly applied to the BOP staff member and the separatee to protect their physical safety.  Nondisclosure of identifying information is appropriate because working in prison exposes staff and inmates to physical attacks, threats, compromise, and harassment.<br><br>The privacy exemptions were improperly used to redact office fax numbers and a stand-alone reference to a disruptive group.  The "zone of privacy" does not extend to general government office telephone or fax numbers.  The processor also redacted a stand-alone reference to an organized crime family.  Obviously, an organized crime group does not have privacy rights under the FOIA.  The BOP must conceded that these were both inappropriate applications of (b)(6) and (b)(7)(C).<br><br>Nevertheless, the reference to the disruptive group was properly redacted using (b)(7)(F) because it was associated with the underlying purpose for the need to protect the separatee.  Physical safety is at risk.  For this reason, disclosure is not required. |
|---|---|---|---|---|---|

| | | | | | The fax numbers, however, must be disclosed.  A copy of this page was released to Mr. Petrucelli with this information disclosed. |
|---|---|---|---|---|---|
| 17 | 6 (one page) | AUSA fax to BOP staff concerning the continued need to keep Mr. Petrucelli separate from a third-party inmate. February 28, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this fax, (b)(6) and (b)(7)(C) were used to protect the identity of the third-party inmate, BOP staff, and the AUSA named in the document.  (In one case, a signature is redacted).  These third parties have legitimate privacy interests in not having their identities disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these individuals. |

On this record, (b)(7)(F) was employed in addition to the privacy exemptions for two out of four redactions of BOP staff members' names listed on the document. As noted above, nondisclosure of identifying information is appropriate because working in prison exposes staff to physical attacks, threats, compromise, and harassment.  The application of (b)(7)(F) is also appropriate to the two redaction based on the privacy exemptions alone.

The privacy exemptions were improperly used to redact an office fax number.  The BOP must conceded that this was an inappropriate application of (b)(6) and (b)(7)(C).  In addition, the privacy exemptions were used to redact the name of the presidentially-appointed United States Attorney.  Because of the public nature of the position of United States Attorney, that individual's privacy expectations are lowered and the public interest in his actions are heightened. A copy of this page was released to Mr. Petrucelli with the fax

| | | | | | number and the identity of the United States Attorney disclosed. |
|---|---|---|---|---|---|
| 18 | 7 (one page) | E-mail between AUSA and BOP Case Manager concerning separation. February 25, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this e-mail, (b)(6) and (b)(7)(C) were used to protect the identity (name and register number) of a third-party inmate/separatee, a BOP case manager, and an AUSA.  One redaction covers the initials of the case manager.  The privacy exemptions were also used to redact the AUSA's direct work phone line.  These third parties have legitimate privacy interests in not having their identities disclosed in this law-enforcement record.  The direct phone number is appropriately redacted because disclosure could lead to harassment.  There is no offsetting public interest in revealing the names of these individuals.<br><br>In one instance, (b)(7)(F) was used with the privacy exemptions to protect the name of the separatee and the reason for separation.  Release of this information would carry with it a high likelihood of endangerment of physical safety.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the name and initials of the BOP case manager.  This reflects the very real safety concerns that arise from working in prison. |
| 19 | 8 (one page) | Memo Documenting Central Inmate Monitoring (CIM) Update. March 13, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this memo, and BOP case manager writes to document that Mr. Petrucelli received a disciplinary sanction for assaulting another inmate.  The inmate/victim's name and register number are redacted pursuant to (b)(6) and (b)(7)(C).  The case manager's name and initials are redacted using (b)(6), (b)(7)(C), and (b)(7)(F).  The case manager and the third-party inmate/victim have an interest in not being named in |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | this law enforcement document.  Release of their names could constitute an unwarranted invasion of privacy.  Although the substantive information in the memo might garner some legitimate public interest, the names that were redacted add nothing to show what the government is up to.  Thus, the privacy interest outweighs the public benefit.<br><br>Finally, (b)(7)(F) was also used with the privacy exemptions to protect the name and initials of the BOP case manager.  This reflects the very real safety concerns that arise from working in prison and directly with dangerous convicts. |
| 20 | 9 (one page) | Memo Concerning Mr. Petrucelli's Central Inmate Monitoring (CIM) Case.  March 20, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this record, a case management coordinator received approval from an acting warden to conclude that it was necessary to keep Mr. Petrucelli separate from four other inmates.  The privacy exemptions were used to redact the BOP staff names and the names of two of Mr. Petrucelli's individual separatees.<br><br>(b)(7)(F) was also used to redact staff names, which is appropriate as staff are law enforcement officers.  With regard to one of the separatees, the processor added (b)(7)(F) because the reason for separation is stated on the document.  Release of this reason could reasonably be expected to endanger this separatee's life or physical safety.<br><br>Finally, (b)(7)(F) was used once to redact information that cannot be described publicly without revealing the nature of the information. |

| 21 | 10 (one page) | Form:  Notification of CIM Classification or Declassification.  March 5, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6), (b)(7)(C), and (b)(7)(F) were used to protect the identity (typed name and signature) of a single BOP staff member.  This staff member has a privacy interest in not having his name appear in this law enforcement document.  The release of his name has no public benefit:  it sheds no light on what the government is up to.  Finally, redaction using (b)(7)(F) is appropriate because of the legitimate safety concerns of working in prison. |
| 22 | 11 (one page) | Form:  CIM Case Information Summary.  March 20, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used on this page to protect the names of three separatee inmates and the federal register numbers of five inmates.  These exemptions were also used to redact the names of an AUSA and a two BOP staff members.  These individuals, who are third parties to the request, have strong privacy interests in in not being identified in this law enforcement record.  The mention of an individual's name in a law enforcement files engenders speculation that carries a stigmatizing connotation.  There is no offsetting public benefit that outweighs the redaction of this identifying information.

(b)(7)(F) was also employed to redact the reason two of the named inmates were Mr. Petrucelli's separatees.  This is an appropriate use in the light of Mr. Petrucelli's violent past and connection to a violent organization.  (b)(7)(F) was also used to redact the names of BOP staff, which was appropriate in the light of the dangerousness of their jobs.

Finally, (b)(7)(F) was used once to redact information that cannot be described publicly without revealing the nature of the information. |

| 23 | 12 (one page) | SENTRY printout: CIM Clearance and Separatee Data. March 21, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(7)(F) was used as a stand-alone redaction to protect Petrucelli's CIM assignment as "separation." This redaction does not make sense, as Mr. Petrucelli was notified of his CIMS assignment in the document on Bates page 21. This page was be released with this redaction removed.  (b)(6) and (b)(7)(C) were used to redact the names and/or register numbers and criminal histories of seven of Mr. Petrucelli's separatees, and they were used to redact three listings of BOP staff initials. The inmate and staff third-parties have a privacy interest in not appearing in this law enforcement record. As no public benefit can be derived from this identifying information, the balancing scales tip in favor of withholding and protecting privacy.  (b)(7)(F) was used with the privacy exemptions for BOP staff initials: this was appropriate in the light of the threats to physical safety that are part of working in a prison. (b)(7)(F) was also properly used to redact the names, register numbers, and case information concerning the seven separatees. Release of this information could easily endanger the lives of physical safety of these individuals.  Finally, (b)(7)(F) was used to redact three discrete lines of information that cannot be described publicly without revealing the nature of the information. |
| 24 | 13 (one page) | Form: Visitor Information. September 2, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the last name of a BOP Correctional Counselor and the name and all of the personally-identifiable information (PII) of a third party seeking to visit Mr. Petrucelli in prison. |

| | | | | | The staff member and the prospective visitor haves strong privacy interests in having their identities withheld from release.  The visitor has a legitimate expectation of the protection of her PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's last name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 25-26 | 14 (two pages) | National Crime Information Center (NCIC) Background Check Report on a Prospective Visitor.  June 5, 2015 | WIF | (b)(6), (b)(7)(C) | These NCIC report pages contain PII concerning a prospective visitor and the name of the BOP staff member who performed the investigation using the NCIC database.  These law enforcement pages contain only third-party information.  No information concerning Mr. Petrucelli is present.  The third parties have strong privacy interests in having their identifiers (and for the visitor, PII) withheld from release.  On the other hand, there is no public benefit to releasing this information.<br><br>Finally, the protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper. |
| 27 | 15 (one page) | Memo:  Visiting List Request.  June 16, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo records a decision to grant visiting privileges to a third party seeking to visit Mr. Petrucelli in prison.  (b)(6) and (b)(7)(C) were used to redact the last name of the Correctional Counselor, the Counselor's signature,  and the signature of the Unit |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Manager.  They were also used to redact the name of the visitor and a summary of the NCIC results concerning that visitor.  These individuals have legitimate privacy interests in having their identifying information withheld from the release of this law enforcement document.  On the other hand, there is no public benefit in releasing this identifying information.  While the public may have an interest in knowing that prisons are run humanely and that visitation is allowed, the release of this case-specific personally-identifying information does not add to that.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff name and signatures.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 28 | 16 (one page) | Form:  Visitor Information. May 21, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the last name of a BOP Correctional Counselor and the name and all of the PII of a third party seeking to visit Mr. Petrucelli in prison.<br><br>The staff member and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's last name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 29-35 | 17 (seven pages) | NCIC Background Check on a Prospective Visitor. June 13, 2014 | WIF | (b)(6), (b)(7)(C) | These NCIC report pages contain PII concerning a prospective visitor and the name of the BOP staff member who performed the complex investigation |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | using the NCIC database.  These law enforcement pages contain only third-party information.  No information concerning Mr. Petrucelli is present.  The third parties have strong privacy interests in the withholding of their identifiers.  Conversely, there is no public benefit to releasing this information.<br><br>Finally, the protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper. |
| 36 | 18 (one page) | Prospective Visitor's Letter to BOP Staff.  May 13, 2014 | WIF | (b)(6), (b)(7)(C) | In this letter, a prospective visitor for Mr. Petrucelli asks a Unit Manager to reconsider his application.  The visitor claims he has no criminal convictions.  (b)(6) and (b)(7)(C) were used to redact the document in full. The information redacted is the identities of the parties in the letter and visitor's explanation of matters that appeared on the NCIC check.  The privacy exemptions were properly used to redact the third parties' identities and the visitor's criminal history.  These third parties have legitimate privacy interests in not appearing in this law enforcement record.  There is no public benefit in releasing the third-party identities and historical narrative.<br><br>Nevertheless, there is information that should have been segregated:  Petrucelli's name and register number should have been released.  The first and last sentences of the letter should have been released because they state the reason for the letter without revealing private information.  This letter was re- |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | processed with the non-exempt information revealed and a copy was sent to Mr. Petrucelli.  See 2017-02392, doc. # 1, Vaughn p. 151 (discussing the additional release of segregable information). |
| 37 (one page) | 19 | Letter Denying Visiting Privileges. October 16, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this record, (b)(6) and (b)(7)(C) were used to redact the name, PII, and criminal history of a prospective visitor and the name of the Unit Manager who signed the letter.  The privacy exemptions were properly used because these third parties have an interest in not appearing in law enforcement records that will be released to the public.  There is no offsetting public interest in this information.  While the public might be interested in the fact that visitors to federal prisons are screened, the identities and information concerning these parties add nothing to that.  <br><br> (b)(7)(F) was also used with the privacy exemptions on the Unit Manager's last name and first initial.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 38 (one page) | 20 | Letter Concerning Decision to Drop Charges Against Prospective Visitor.  August 2, 2011 | WIF | (b)(6), (b)(7)(C) | In this letter, a local district attorney's office explained that the charges against the prospective visitor would not be pursued.  (b)(6) and (b)(7)(C) were used to withhold in full the contents of this law enforcement record.  Items withheld are the PII and arrest and charge history of the prospective visitor and the name of the local district attorney.  There is only third-party information in this letter.  The parties to the letter have legitimate expectations of privacy, although the district attorney arguably is a public figure with a lowered expectations.  Nonetheless, to reveal the district attorney's information would shine unfavorable light on facts, in the light of the release as a whole, |

| | | | | | concerning the prospective visitor under the mosaic theory. There is no public benefit to releasing this letter or segregating the DA's information as the identity information does not add to the public benefit. Considering the stigmatizing nature of the facts in the letter, the balancing scales tip in favor of privacy. |
|---|---|---|---|---|---|
| 39 | 21 (one page) | Memo: Visitng List Request. April 9, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo records a decision to grant visiting privileges to a third party seeking to visit Mr. Petrucelli in prison. (b)(6) and (b)(7)(C) were used to redact the last name of the Correctional Counselor, the Counselor's signature, and the signature of the Unit Manager. They were also used to redact the name of the visitor and a summary of the NCIC results concerning an uninvolved individual's name that was a search result. These individuals have legitimate privacy interests in having their identifying information withheld from the release of this law enforcement document. On the other hand, there is no public benefit in releasing this identifying information. While the public may have an interest in knowing that prisons permit visitation, the release of this case-specific personally-identifying information does not add to that.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff names and signatures. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 40 | 22 (one page) | Form: Visitor Information. March 25, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the last name of a BOP Correctional Counselor and the name and all of the PII of a third party seeking to visit Mr. Petrucelli in prison. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | The staff member and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's last name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 41-42 | 23 (two pages) | NCIC Background Check on a Prospective Visitor.  April 9, 2014 | WIF | (b)(6), (b)(7)(C) | These NCIC report pages contain PII concerning a prospective visitor and the names of third-party "hits" found in the database.  These law enforcement pages contain only third-party information.  No information concerning Mr. Petrucelli is present.  To the extent the third-party "hits" may be actual individuals, rather than aliases, the third parties have strong privacy interests in having their identifiers exempted from release.[2]  The subject of the search has a strong privacy interest in keeping historical information private.  There is no countervailing public benefit to releasing these records.<br><br>Finally, the protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no meaningful information content.  Withholding in full, rather than attempting to segregate information, was proper. |
| 43 | 24 (one page) | Memo:  Denial of Visiting Privileges.  November 17, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the first initial and last name of a BOP Correctional Counselor and the full name of a third party seeking to visit Mr. Petrucelli in prison.  The staff member and the |

---

[2] The BOP does not contend that the privacy protection arising from (b)(6) and (b)(7)(C) extends to aliases or other fictitious identifiers.

| | | | | | |
|---|---|---|---|---|---|
| | | | | | prospective visitor have a strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's last name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 44 | 25 (one page) | Memo:  Visiting List Request.  November 25, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo records a decision to deny visiting privileges to a third party seeking to visit Mr. Petrucelli in prison.  (b)(6) and (b)(7)(C) were used to redact the first initial and last name of the Correctional Counselor, the Counselor's signature, and they were used to excise signature of the Unit Manager.  They were also used to redact the name of the prospective visitor and a summary of the NCIC results concerning this person.  These individuals have legitimate privacy interests in having their identifying information withheld from the release of this law enforcement document.  On the other hand, there is no public benefit in releasing this identifying information.  While the public may have an interest in knowing that prison visitation is allowed, the release of this case-specific personally-identifying information does not add to that.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff names and signatures.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 45 | 26 (one page) | Form:  Visitor Information.  November 11, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the name of a BOP Correctional Counselor and the name and all |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | of the PII of a third party seeking to visit Mr. Petrucelli in prison.<br><br>The staff member and the prospective visitor have strong privacy interests in having their identities withheld from release in this law enforcement record, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 46-52 | 27 (seven pages) | NCIC Background Check on a Prospective Visitor. November 25, 2013 | WIF | (b)(6), (b)(7)(C) | These NCIC report pages contain PII concerning a prospective visitor and the name of the BOP staff member who performed the complex investigation using the NCIC database.  These law enforcement pages contain only third-party information.  No information concerning Mr. Petrucelli is present.  The Correctional Counselor has a strong privacy interest in having his identifying information withheld from release.  The prospective visitor has a strong privacy interest in keeping his identifying and NCIC PII data private.  Conversely, there is no public benefit to releasing these records.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no meaningful information content. Withholding in full, rather than attempting to segregate information, was proper. |

| 53 | 28 (one page) | Memo: Visiting List Request. September 17, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo records a decision to deny visiting privileges to a third party seeking to visit Mr. Petrucelli in prison. (b)(6) and (b)(7)(C) were used to redact the first initial and last name of the Correctional Counselor, the Counselor's signature, and they were used to excise signature of the Unit Manager. They were also used to redact the name of the prospective visitor and a summary of the NCIC results concerning this person. These individuals have legitimate privacy interests in having their identifying information withheld from the release of this law enforcement document. The prospective visitor has a privacy interest in not having NCIC information released. On the other hand, there is no public benefit in releasing this identifying information. While the public may have an interest in knowing that prisons permit visitation, the release of this case-specific personally-identifying information does not add to that.

(b)(7)(F) was also used with the privacy exemptions on the staff names and signatures. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 54 | 29 (one page) | Form: Visitor Information. September 11, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the name of a BOP Correctional Counselor and the name and all of the PII of a third party seeking to visit Mr. Petrucelli in prison. The staff member and the prospective visitor have strong privacy interests in having their identities—and with the visitor, PII—withheld from release of this law enforcement record. There is no countervailing public benefit in releasing this identifying information. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 55-61 | 30 (seven pages) | NCIC Background Check on a Prospective Visitor. September 16, 2013 | WIF | (b)(6), (b)(7)(C) | These NCIC report pages contain PII concerning a prospective visitor and the name of the BOP staff member who performed the complex investigation using the NCIC database.  These law enforcement pages contain only third-party information.  No information concerning Mr. Petrucelli is present.  The Correctional Counselor who initiated the report has a strong privacy interest in having his identifying information exempted from release.  The prospective visitor has a strong privacy interest in keeping his identifying and NCIC data private.  Conversely, there is no public benefit to releasing these records.<br><br>Finally, the protected information makes up the entirety of these pages or is inextricably intertwined with report data (*e.g.* strings of numerical codes and non-identifying user serial numbers), that makes no sense.  Withholding in full, rather than attempting to segregate information, was proper. |
| 62-63 | 31 (two pages) | Envelope and letter dated about May 14, 2014 (postmark date) | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This is correspondence regarding visiting privileges. (b)(6) and (b)(7)(C)—the privacy exemptions—were used to protect the identities of prospective visitor and a BOP Unit Manager named in the document.  The privacy exemptions protect information that would or could cause and unwarranted invasion of privacy. Public identification of public servants could conceivably subject them to harassment and annoyance in the conduct of their official duties and private lives. Courts have held that third-party inmates have |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | legitimate interests in not appearing in law enforcement documents.  These third parties have legitimate privacy interests in not appearing in this law-enforcement record.  There is no countervailing public interest in revealing the names of these individuals.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 64-65 | 32 (two pages) | Envelope and Visitor Information Form dated September 22, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the name of a BOP Correctional Counselor (on the envelope and form), the name of a BOP Unit Manager, and the name and all of the PII of a third party seeking to visit Mr. Petrucelli in prison.<br><br>These individuals have strong privacy interests in having their identities—and with the visitor, PII— withheld from release of this law enforcement record.  There is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the names of BOP staff members.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 66 | 33 (one page) | Form:  Visitor Information.  August 31, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the name of a BOP Correctional Counselor and the name and all of the personally-identifiable information (PII) of a third party seeking to visit Mr. Petrucelli in prison.  The staff member and the prospective visitor have strong privacy interests in having their identities |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | excluded from the release of this document.  The visitor has an interest in the protection of her PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's last name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 67-68 | 34 (two pages) | NCIC Background Check on a Prospective Visitor. September 10, 2013 | WIF | (b)(6), (b)(7)(C) | These NCIC report pages contain PII concerning a prospective visitor.  These law enforcement pages contain only third-party information.  No information concerning Mr. Petrucelli is present.  The third party has a strong privacy interest in having her identifiers withheld from release.  On the other hand, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper. |
| 69 | 35 (one page) | Memo:  Visiting List Request.  May 16, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo records a decision to deny visiting privileges to a third party seeking to visit Mr. Petrucelli in prison.  (b)(6) and (b)(7)(C) were used to redact the first initial and last name of the Correctional Counselor, the Counselor's signature, and they were used to excise signature of the Unit Manager.  They were also used to redact the name of the prospective visitor and a summary of the NCIC results concerning this person.  These individuals have legitimate privacy interests in having their identifying information |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | withheld from the release of this law enforcement document.  The prospective visitor has a privacy interest in not having NCIC information released.  On the other hand, there is no public benefit in releasing this identifying information or the NCIC findings.  While the public may have an interest in knowing that prisons screen visitors, the release of this case-specific personally-identifying information does not add to that.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff names and signatures.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 70 | 36 (one page) | Fax from NY Dep't of Corrections dated June 4, 2013 | WIP | (b)(6), (b)(7)(C) | In this fax, (b)(6) and (b)(7)(C) were used to protect the identity of the third-party parolee, the identities of two parole officers, criminal history concerning the third party, and a direct-line telephone number for one of the parole officers.  These third parties have legitimate privacy interests in not having their identities disclosed in this law-enforcement record.  The parolee has an interest in not having his criminal history made public.  The zone of privacy extends to the direct contact information of the parole officer: release of the number could conceivably subject her to harassment and annoyance in the conduct of her official duties and her private life.<br><br>The parole officers and the visitor have legitimate privacy interests in not appearing in this law-enforcement record.  There is no offsetting public interest in revealing the names or direct-access numbers of these individuals or the parolee's past. |

| | | | | | The privacy exemptions were improperly used to redact an office fax number for the NY DOC. The BOP must conceded that this was an inappropriate application of (b)(6) and (b)(7)(C). No individual privacy interest can exist in a general office phone number that is not attached to an individual. A copy of this page was released to Mr. Petrucelli with the fax number disclosed. |
| 71 | 37 (one page) | Form: Visitor Information. March 20, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The privacy exemptions were used here to protect the name of a BOP Correctional Counselor and the name and all of the personally-identifiable information (PII) of a third party seeking to visit Mr. Petrucelli in prison. The staff member and the prospective visitor have strong privacy interests in having their identities excluded from the release of this law enforcement document. The visitor has an interest in the protection of his PII, and there is no countervailing public benefit in releasing this information. <br><br> (b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's last name. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 72-77 | 38 (six pages) | NCIC Background Check on a Prospective Visitor. May 16, 2013 | WIF | (b)(6), (b)(7)(C) | These NCIC report pages contain PII concerning a prospective visitor. These law enforcement pages contain only third-party information. No information concerning Mr. Petrucelli is present. The third party has a strong privacy interest in having his identifiers withheld from release. Conversely, there is no countervailing public benefit to releasing this information. |

| | | | | | The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content. Withholding in full, rather than attempting to segregate information, was proper. |
|---|---|---|---|---|---|
| 78 | 39 (one page) | Memorandum Concerning a Parole Officer's Approval of a Third Party to Visit an Inmate. July 18, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this document, a New York Parole Officer approved his parolee's request to visit Mr. Petrucelli. (b)(6) and (b)(7)(C) were employed to redact the identifying information of the Parole Officer, the third-party Parolee, and the BOP Correctional Counselor responsible for gathering visitation information. These individuals have substantial privacy interests in the withholding of their identifiers. The public interest here is whether the BOP thoroughly vets prospective visitors. The document sheds light on this, but the redaction of the individual identifiers does not detract from that information. The balancing of these interests tips in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's last name. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 79 | 40 (one page) | Handwritten Note Concerning Visitor Approval. (undated) | WIP | (b)(6), (b)(7)(C) | In this handwritten note, Mr. Petrucelli asks staff to mail a letter to a New York State Parole Officer. The privacy exemptions were used to redact the names of the third-party parolee and his Parole Officer. These third parties have a privacy interest in having their identifiers excluded from the release of this law enforcement record. There is no public interest at stake in these identifiers; therefore, on the balance, privacy was properly protected. |

| 80 | 41 (one page) | Fax Transmittal Cover Page. July 18, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this fax cover page, (b)(6) and (b)(7)(C) were used to protect the identities of a NY Parole Officer and a BOP Correctional Counselor.  The parole officer and the counselor have legitimate privacy interests in having their names exempted from release in this law-enforcement record.  There is no offsetting public interest in revealing the names.<br><br>The privacy exemptions were improperly used to redact the office fax number for the NY DOC and the fax number for Mr. Petrucelli's prison.  No individual privacy interest can exist in a general office fax number that is not attached to an individual.  A copy of this page was released to Mr. Petrucelli with the fax numbers disclosed. |
| 81 | 42 (one page) | Form:  Visitor Information.  September 2, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the last name of a BOP Correctional Counselor and all of the PII of a third party seeking to visit Mr. Petrucelli in prison.  The staff member and the prospective visitor have strong privacy interests in having their identities excluded from the release of this law enforcement document.  The visitor has a legitimate privacy expectation in the protection of her PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's last name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 82 | 43 (one page) | NCIC Background Check on a Prospective Visitor. September 27, 2012 | WIF | (b)(6), (b)(7)(C) | This NCIC report page contain PII concerning a prospective visitor.  This law enforcement page contains only third-party information.  No information |

| | | | | | concerning Mr. Petrucelli is present.  The third party has a strong privacy interest in having her identifiers withheld from release.  Conversely, there is no countervailing public benefit to releasing this information.<br><br>Finally, the protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper. |
|---|---|---|---|---|---|
| 83 | 44 (one page) | Memo:  Visiting List Request.  September 28, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo records a decision to grant visiting privileges to a third party seeking to visit Mr. Petrucelli in prison.  (b)(6) and (b)(7)(C) were used to redact the first initial and last name of the Correctional Counselor, the Counselor's signature, and they were used to excise signature of the Unit Manager.  They were also used to redact the name of the prospective visitor and a summary of the NCIC results concerning this person.  These individuals have legitimate privacy interests in having their identifying information withheld from the release of this law enforcement document.  The prospective visitor has a privacy interest in not having NCIC information released.  On the other hand, there is no public benefit in releasing this identifying information.  While the public may have an interest in knowing that prisons permit visitation, the release of this case-specific personally-identifying information does not add to that.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff names and signatures.  This was appropriate |

| | | | | | in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 84 | 45 (one page) | Form:  Visitor Information.  September 22, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the last name and first initial of a BOP Correctional Counselor and all of the PII of a third party seeking to visit Mr. Petrucelli in prison.  The staff member and the prospective visitor have weighty privacy interests in having their identities excluded from the release of this law enforcement document.  The visitor has a legitimate expectation of the protection of his PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's last name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 85-93 | 46 (nine pages) | NCIC Background Check on a Prospective Visitor. September 28, 2012 | WIF | (b)(6), (b)(7)(C) | These NCIC report pages contain PII concerning a prospective visitor.  This law enforcement record contains only third-party information.  The third party has a strong privacy interest in having his identifiers withheld.  Conversely, there is no countervailing public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper. |
| 94 | 47 (one page) | Form:  Visitor Information.  August 31, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the last name and first initial of a BOP Correctional Counselor and all of the PII of a third party seeking to visit Mr. |

| | | | | | Petrucelli in prison.  The staff member and the prospective visitor both have strong privacy interests in having their identities exempted from release.  The visitor has a legitimate expectation of the protection of her PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's last name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 95 | 48 (one page) | NCIC Background Check on a Prospective Visitor. September 7, 2012 | WIF | (b)(6), (b)(7)(C) | These NCIC report pages contain PII concerning a prospective visitor.  This law enforcement record contains only third-party information.  The third party has a strong privacy interest in having her PII exempted from release.  Conversely, there is no countervailing public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper. |
| 96 | 49 (one page) | Form:  Proposed Visitor with Criminal History. October 9, 2011 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, the processor used (b)(6) and (b)(7)(C) to protect the names of a BOP Correctional Counselor, an Special Investigative Supervisory (SIS) Lieutenant, a Captain, and an Associate Warden acting on behalf of the Warden.  The privacy exemptions were also used to protect the PII (including criminal history) of a third party seeking to visit Mr. Petrucelli in prison.  The proposed visitor and the BOP staff (except the |

| | | | | | Associate/Acting Warden) have strong privacy interests in having their identities withheld from release of this law enforcement document.<br>The Acting Warden's expectation of privacy is lowered; however, because the nature of her duties are more public-facing, and she has broad discretionary authority to operate the prison.  For these reasons, the public interest in what the Warden is up to has substance.  In this situation, the scales tip toward releasing the Acting Warden's identity.<br><br>(b)(7)(F) was also used with the privacy exemptions on the names of all BOP staff in the record, including the Warden.  With staff other than the Acting Warden, this was appropriate in the light of the threats to physical safety inherent with working in a prison.  With regard to the Acting Warden, the BOP does not contend that (b)(7)(F) requires withholding of her identity.  A copy of this page was released to Mr. Petrucelli with the identity of the Acting/Associate Warden disclosed. |
| 97 | 50 (one page) | Form:  Visitor Information.  October 17, 2011 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the last name and first initial of a BOP Correctional Counselor and all of the PII of a third party seeking to visit Mr. Petrucelli in prison.  The staff member and the prospective visitor both have strong privacy interests in having their identities withheld from release.  The visitor has a legitimate expectation of the protection of his PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's name.  This was |

| | | | | | appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 98-102 | 51 (five pages) | NCIC Background Check on a Prospective Visitor. October 23, 2011 | WIF | (b)(6), (b)(7)(C) | These NCIC report pages contain PII concerning a prospective visitor.  This law enforcement record contains only third-party information.  The third party has a strong privacy interest in having his PII exempted from release.  On the other hand, there is no countervailing public benefit to releasing this information.

The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper. |
| 103 | 52 (one page) | Form:  Proposed Visitor with Criminal History. October 9, 2011 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, the processor used (b)(6) and (b)(7)(C) to protect the names of a BOP Unit Manager, an SIS Lieutenant, a Captain, and an Associate Warden acting on behalf of the Warden.  The privacy exemptions were also used to protect the PII (including criminal history) of a third party seeking to visit Mr. Petrucelli in prison.  The proposed visitor and the BOP staff (except the Associate/Acting Warden) have strong privacy interests in having their identities exempted from release.

The Acting Warden's expectation of privacy is lowered; however, because the nature of her duties are more public-facing, and she has broad discretionary authority to operate the prison.  For these reasons, the public interest in what the Warden is up to has substance.  In this situation, the scales tip toward |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | releasing the Acting/Associate Warden's identity. With regard to the other parties, there substantial interest in having their privacy protected remains intact.  No offsetting public benefit exists. Withholding of these identifiers was appropriate.<br><br>(b)(7)(F) was also used with the privacy exemptions on the names of all BOP staff in the record, including the Acting/Associate Warden.  With staff other than the Acting Warden, this was appropriate in the light of the threats to physical safety inherent with working in a prison.  With regard to the Acting Warden, the BOP does not contend that (b)(7)(F) requires withholding of her identity.  A copy of this page was released to Mr. Petrucelli with the identity of the Acting/Associate Warden disclosed. |
| 104 | 53 (one page) | Form:  Visitor Information. May 20, 2008 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the signature of a BOP Correctional Counselor and all of the PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor and the prospective visitor both have a weighty privacy interest in having their identities exempted from release.  The visitor has a legitimate expectation of the protection of his PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 105-112 | 54 (eight pages) | NCIC Background Check on a Prospective Visitor. May 30, 2008 | WIF | (b)(6), (b)(7)(C) | These eight NCIC report pages contain PII concerning a prospective visitor.  This law enforcement record contains only third-party information.  The third party |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | has a strong privacy interest in having his PII withheld from release.  Conversely, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 113 | 55 (one page) | Memo:  Visiting List Request.  August 21, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo chronicles a decision to deny visiting privileges to a third party seeking to visit Mr. Petrucelli in prison.  The privacy exemptions were used to redact the signature of an Associate Warden and the names and signatures of a Correctional Counselor and a Unit Manager.  They were also used to redact the name of the prospective visitor, a notation concerning criminal history, and a summary of the NCIC results concerning this person.  These individuals have legitimate privacy interests in having their identifying information withheld from the release of this law enforcement document.  The prospective visitor has a privacy interest in not having criminal history information released.  On the other hand, there is no public benefit in releasing this identifying information.  While the public may have an interest in knowing that prisons screen visitors carefully, the release of this case-specific personally-identifying information does not add to that.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff names and signatures.  This was appropriate |

| | | | | | in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 114 | 56 (one page) | Form:  Visitor Information.  July 1, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, the privacy exemptions were used to redact the name of a BOP Correctional Counselor and all of the PII of a third party seeking to visit Mr. Petrucelli.  The Counselor and the prospective visitor both have a strong privacy interests in having their identities exempted from release.  The visitor has a legitimate expectation of privacy in the protection of his PII, and there is no countervailing public benefit in releasing this information.  (b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 115-119 | 57 (five pages) | Report:  NCIC Background Check.  August 20, 2012 | WIF | (b)(6), (b)(7)(C) | These five NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C).  This law enforcement record contains only third-party information.  The third party has a strong privacy interest in having his PII exempted from release.  On the other hand, there is no public benefit to releasing this information.  The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 120 | 58 (one page) | Memo:  Visiting List Request for Inmate.  July 20, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo chronicles a decision to approve visiting privileges for a third party who is seeking to visit Mr. Petrucelli in prison.  The privacy exemptions were |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | used to redact the signature of a Unit Manager and the name and signature of a Correctional Counselor. (b)(6) and (b)(7)(C) were also used to redact the name of the prospective visitor and a notation concerning an NCIC "hit." These individuals have legitimate privacy interests in having their identifying information withheld from the release of this law enforcement document. On the other hand, there is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff name and signatures. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 121 | 59 (one page) | Form: Visitor Information. July 20, 2011 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, the privacy exemptions were used to redact the name of a BOP Correctional Counselor and all of the PII of a third party seeking to visit Mr. Petrucelli. The Counselor and the prospective visitor both have strong privacy interests in having their identities withheld from release. The visitor has a legitimate expectation of the protection of her PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's name. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 122-123 | 60 (two pages) | Report: NCIC Background Check. March 9, 2012 | WIF | (b)(6), (b)(7)(C) | These two NCIC report pages contain PII concerning a prospective visitor that was withheld in full under the privacy exemptions. This law enforcement record contains only third-party information. The third party has a strong privacy interest in having her PII |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | exempted from release.  Conversely, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 124 | 61 (one page) | Form:  Visitor Information.  July 1, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, the privacy exemptions were used to redact the name of a BOP Correctional Counselor and all of the PII of a third party seeking to visit Mr. Petrucelli.  The Counselor and the prospective visitor both have strong privacy interests in having their identities withheld from release.  The visitor has a legitimate expectation of the protection of her PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 125-126 | 62 (two pages) | Report:  NCIC Background Check.  July 13, 2012 | WIF | (b)(6), (b)(7)(C) | These two NCIC report pages contain PII concerning a prospective visitor that was withheld in full under the privacy exemptions.  This law enforcement record contains only third-party information.  The third party has a strong privacy interest in having her PII withheld from release.  Conversely, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | disjointed words and codes, which taken separately or together, have no information content. Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 127 | 63 (one page) | Form: Visitor Information. July 1, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, the privacy exemptions were used to redact the name of a BOP Correctional Counselor and all of the PII of a third party seeking to visit Mr. Petrucelli. The Counselor and the prospective visitor both have weighty privacy interests in having their identities exempted from release. The visitor has a legitimate expectation of the protection of her PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's name. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 128-131 | 64 (four pages) | Report: NCIC Background Check. July 12, 2012 | WIF | (b)(6), (b)(7)(C) | These four NCIC report pages contain PII concerning a prospective visitor that was withheld in full under the privacy exemptions. This law enforcement record contains only third-party information. The third party has a strong privacy interest in having her PII exempted from release. Conversely, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content. Withholding in full, rather than attempting to segregate information, was proper in these records. |

| 132 | 65 (one page) | Form:  Visitor Information.  March 21, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the signature of a BOP Correctional Counselor and the name and all of the PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor and the prospective visitor have a strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Correctional Counselor's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| --- | --- | --- | --- | --- | --- |
| 133-138 | 66 (six pages) | Report:  NCIC Background Investigation.  March 26, 2003 | WIF | (b)(6), (b)(7)(C) | These six NCIC report pages contain PII concerning a prospective visitor that was withheld in full under the privacy exemptions.  This law enforcement record contains only third-party information.  The third party has a strong privacy interest in having her PII exempted from release.  On the other hand, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 139 | 67 (one page) | Form:  Visitor Information.  March 10, 2010 | WIP | (b)(6), (b)(7)(C) | (b)(6) and (b)(7)(C) were used here to protect the name and all of the PII of a third party seeking to visit Mr. Petrucelli in prison.  The prospective visitor has a strong privacy interest in having her identity withheld from release, and there is no countervailing public benefit in releasing this identifying information. |

| 140-141 | 68 (two pages) | Report: NCIC Background Check. April 2, 2010 | WIF | (b)(6), (b)(7)(C) | These two NCIC report pages contain PII concerning a prospective visitor that was withheld in full under the privacy exemptions. This law enforcement record contains only third-party information. The third party has a strong privacy interest in having her PII withheld from release. Conversely, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content. Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 142 | 69 (one page) | Form: Visitor Information. June 23, 2006 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the signatures of two BOP staff members and the name and all of the PII of a third party seeking to visit Mr. Petrucelli in prison. The signatures are difficult to read, but it is axiomatic that handwriting can be identifying. These staff members and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff signatures. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 143-146 | 70 (four pages) | Report: NCIC Background Check. August 4, 2006 | WIF | (b)(6), (b)(7)(C) | These four NCIC report pages contain PII concerning a prospective visitor that was withheld in full under the privacy exemptions. Unlike the others in this record, this NCIC report also contains the name of the BOP |

| | | | | | staff member who conducted the background check. The staff member and the prospective visitor have strong privacy interests in having their PII withheld from release.  Conversely, there is no public benefit to releasing this information.<br><br>The BOP contends that (b)(7)(F) also supports the redaction of the staff member's name because of the threats to physical safety that are inherent with working in a prison.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
|---|---|---|---|---|---|
| 147 | 71 (one page) | Form:  Visitor Information. December 29, 2005 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the signature of a Correctional Counselor and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Counselor's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 148-151 | 72 (four pages) | Report:  NCIC Background Check. January 27, 2006 | WIF | (b)(6), (b)(7)(C) | These four NCIC report pages contain PII concerning a prospective visitor that was withheld in full under the privacy exemptions.  This NCIC report also contains |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | the name of the BOP staff member who conducted the background check. The staff member and the prospective visitor have strong privacy interests in having their PII withheld from release.  Conversely, there is no public benefit to releasing this information.<br><br>The BOP contends that (b)(7)(F) also supports the redaction of the staff member's name because of the threats to physical safety that are inherent with working in a prison.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 152 | 73 (one page) | Form:  Visitor Information. March 2014 (the day is not noted) | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the signature of a Correctional Counselor and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Counselor's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 153-154 | 74 (two pages) | Report:  NCIC Background Check. September 1, 2005 | WIF | (b)(6), (b)(7)(C) | These two NCIC report pages contain PII concerning a prospective visitor that was withheld in full under the privacy exemptions.  This law enforcement record |

| | | | | | contains only third-party information.  The third party has a strong privacy interest in having her PII withheld from release.  Conversely, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
|---|---|---|---|---|---|
| 155 | 75 (one page) | Form:  Visitor Information.  June 16, 2005 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the signature of a Correctional Counselor and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Counselor's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 156-57 | 76 (two pages) | Report:  NCIC Background Check.  July 17, 2005 | WIF | (b)(6), (b)(7)(C) | These two NCIC report pages contain PII concerning a prospective visitor that was withheld in full under the privacy exemptions.  This law enforcement record contains only third-party information.  The third party has a strong privacy interest in having her PII withheld from release.  Conversely, there is no public benefit to releasing this information. |

| | | | | | The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
|---|---|---|---|---|---|
| 158 | 77 (one page) | Form:  Visitor Information.  March 5, 2006 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the signature of a Correctional Counselor and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Counselor's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 159-165 | 78 (seven pages) | Report:  NCIC Background Check.  March 18, 2006 | WIF | (b)(6), (b)(7)(C) | These seven NCIC report pages contain PII concerning a prospective visitor that was withheld in full under the privacy exemptions.  This NCIC report also contains the name of the BOP staff member who conducted the background check. The staff member and the prospective visitor have strong privacy interests in having their PII withheld from release.  On the other hand, there is no public benefit to releasing this information.<br><br>The BOP contends that (b)(7)(F) also supports the redaction of the staff member's name because of the threats to physical safety that are inherent with working in a prison. |

| | | | | | The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
|---|---|---|---|---|---|
| 166 | 79 (one page) | Form:  Visitor Information.  April 8, 2005 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The privacy exemptions were used here to protect the signature of a Correctional Counselor and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Counselor's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 167-169 | 80 (three pages) | Report:  NCIC Background Check.  April 12, 2005 | WIF | (b)(6), (b)(7)(C) | These three NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C).  The prospective visitor has a weighty privacy interests in having her PII withheld from release.  On the other hand, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |

| 170 | 81 (one page) | Form: Visitor Information. September 17, 2004 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The privacy exemptions were used here to protect the signature of a Correctional Counselor and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison. The Counselor and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.

(b)(7)(F) was also used with the privacy exemptions on the Counselor's signature. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 171-72 | 82 (two pages) | Report: NCIC Background Check. September 23, 2004 | WIF | (b)(6), (b)(7)(C) | These two NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C). The prospective visitor has a weighty privacy interests in having his PII withheld from release. On the other hand, there is no public benefit to releasing this information.

The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content. Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 173 | 83 (one page) | Memo: Denial of Visitation. December 30, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo chronicles a decision to deny visiting privileges for a third party seeking to visit Mr. Petrucelli in prison. The privacy exemptions were used to redact the name and signature of a Unit Manager and the name of a Correctional Counselor. (b)(6) and (b)(7)(C) were also used to redact the name of the prospective visitor. These individuals have |

| | | | | | legitimate privacy interests in having their identifying information withheld from release.  On the other hand, there is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff names and signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 174 | 84 (one page) | Form:  Visitor Information.  December 12, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used on this form to redact the last name and the signature of a Correctional Counselor, the signature of a Unit Manager and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor, Unit Manager, and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the names of BOP staff.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 175-184 | 85 (ten pages) | Report:  NCIC Background Check.  December 29, 2003 | WIF | (b)(6), (b)(7)(C) | These ten NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C).  They also contain the name of the Correctional Counselor who conducted the search and the name of a local law-enforcement official responsible for the integrity of that locality's NCIC data.  These individuals have weighty privacy interests in having their names and other PII withheld from release.  On the other hand, there is no public benefit to releasing this information. |

| | | | | | The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content. Withholding in full, rather than attempting to segregate information, was proper in these records. |
|---|---|---|---|---|---|
| 185 | 86 (one page) | Form:  Visitor Information (undated) | WIP | (b)(6), (b)(7)(C) | On this undated form, (b)(6) and (b)(7)(C) were used to redact the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The prospective visitor has a strong privacy interests in having her identity withheld from release, and there is no countervailing public benefit in releasing this identifying information. |
| 186-188 | 87 (three pages) | Report:  NCIC Background Check. December 3, 2003 | WIF | (b)(6), (b)(7)(C) | These three NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C).  They also contain the last name of the Correctional Counselor who conducted the search.  These individuals have weighty privacy interests in having their names and other PII withheld from release.  On the other hand, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 189 | 88 (one page) | Form:  Visitor Information. July 19, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used on this form to redact the signature of a Correctional Counselor and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor and the prospective visitor have strong privacy interests in |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the signature of the Counselor.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 190-192 | 89 (three pages) | Report:  NCIC Background Check. August 2, 2003 | WIF | (b)(6), (b)(7)(C) | These three NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C).  They also contain the last name of the Correctional Counselor who conducted the search.  These individuals have weighty privacy interests in having their names and other PII withheld from release.  On the other hand, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 193 | 90 (one page) | Form:  Visitor Information.  (undated) | WIP | (b)(6), (b)(7)(C) | On this undated form, (b)(6) and (b)(7)(C) were used to redact the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The prospective visitor has a strong privacy interests in having her identity withheld from release, and there is no countervailing public benefit in releasing this identifying information. |
| 194-197 | 91 (four pages) | Report:  NCIC Background Check.  April 26, 2003 | WIF | (b)(6), (b)(7)(C) | These four NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C).  They also contain the last name |

| | | | | | of the Correctional Counselor who conducted the search.  These individuals have weighty privacy interests in having their names and other PII withheld from release.  On the other hand, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
|---|---|---|---|---|---|
| 198 | 92 (one page) | Form:  Visitor Information. April 9, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were used on this form to redact the signature of a Correctional Counselor and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the signature of the Counselor.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 199-201 | 93 (three pages) | Report:  NCIC Background Check (April 16, 2003) | WIF | (b)(6), (b)(7)(C) | These three NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C).  They also contain the full name of the Correctional Counselor who conducted the search.  These individuals have weighty privacy interests in having their names and other PII withheld from release.  On the other hand, there is no public benefit to releasing this information. |

| | | | | | The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
|---|---|---|---|---|---|
| 202 | 94 (one page) | Form:  Visitor Information.  March 9, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were used on this form to redact the signature of a Correctional Counselor, the signature of a Unit Manager, and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The Counselor, the Unit Manager, and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the signatures of the BOP staff.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 203-207 | 95 (five pages) | Report:  NCIC Background Check.  March 31, 2003 | WIF | (b)(6), (b)(7)(C) | These five NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C).  They also contain the full name of the Correctional Counselor who conducted the search.  These individuals have weighty privacy interests in having their names and other PII withheld from release.  On the other hand, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in |

| | | | | | | full, rather than attempting to segregate information, was proper in these records. |
|---|---|---|---|---|---|---|
| 208 | 96 (one page) | Form:  Visitor Information.  March 17, 2003 | WIP | | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were used on this form to redact the signature of a Unit Manager and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison.  The Unit Manager and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the signature of the Unit Manager.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 209-211 | 97 (three pages) | Report:  NCIC Background Check.  March 23, 2003 | WIF | | (b)(6), (b)(7)(C) | These three NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C).  They also contain the full name of the Correctional Counselor who conducted the search.  These individuals have weighty privacy interests in having their names and other PII withheld from release.  On the other hand, there is no public benefit to releasing this information.<br><br>The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 212 | 98 (one page) | Memo:  Attorney Visit.  December 28, 2009 | WIP | | (b)(6), (b)(7)(C), (b)(7)(F) | This form was prepared following the approval of a contact visit between Mr. Petrucelli and his attorney.  (b)(6) and (b)(7)(C) were used as authority to redact |

| | | | | | the name of Mr. Petrucelli's attorney and the names and signatures of a BOP Counselor, an Associate Warden, a Captain, and an SIS Lieutenant. All of these individuals have a privacy interest in having their names withheld from the release of this law enforcement document. There is no public benefit in releasing this identifying information. While the public needs to know that inmates have access to legal services, the release of this information does not add to the public's understanding.<br><br>(b)(7)(F) was also used with the privacy exemptions on all of the BOP staff names/signatures. This was appropriate in the light of the threats to physical safety inherent in working in a prison. |
|---|---|---|---|---|---|
| 213 | 99 (one page) | Form: Visitor Information | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this visitor information form, (b)(6) and (b)(7)(C) were used to redact the last name of a Correctional Counselor and the name and all other PII of a third party seeking to visit Mr. Petrucelli in prison. The Counselor and the prospective visitor have strong privacy interests in having their identities withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the last name of the Counselor. This was appropriate in the light of the very real dangers of physical harm faced by correctional workers. |
| 214-219 | 100 (six pages) | Report: NCIC Background Check. December 28, 2009 | WIF | (b)(6), (b)(7)(C), (b)(7)(F) | These six NCIC report pages contain PII concerning a prospective visitor that was withheld in full under (b)(6) and (b)(7)(C). They also contain the last name of the Correctional Counselor who conducted the search and the name of a local law-enforcement |

| | | | | | official responsible for the integrity of that locality's NCIC data.  All are third parties to this request.  These individuals have weighty privacy interests in having their names and other PII withheld from release.  On the other hand, there is no public benefit to releasing this information.  The protected information is inextricably intertwined with computer data that amounts to nothing more than disjointed words and codes, which taken separately or together, have no information content.  Withholding in full, rather than attempting to segregate information, was proper in these records. |
| 220 | 101 (one page) | Fax Cover Sheet Concerning Attorney Visit.  December 22, 2009 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this fax cover sheet, the processor used (b)(6) and (b)(7)(C) to redact the first initial and last name of a correctional counselor.  She also used the privacy exemptions to excise the attorney's signature, name, direct phone line number, cell number, and fax number.  The attorney's name and phone numbers are pre-printed on this form, suggesting that the attorney does not have an expectation of privacy in this information.  Nevertheless, this document is now an agency record and a law enforcement document.  It is expected that third parties appearing in these records have an interest in nondisclosure because of the notorious nature of criminal records.  In addition, the form shows that the attorney operates as a sole proprietorship, rather than part of a law form or a limited liability corporation.  It is submitted that, in the light of these factors, the counselor and the attorney have legitimate privacy interests in their identifying information.  There is no offsetting public benefit in this identifying information.  The remaining |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | information shows that inmates have access to legal counsel.  Because there is no public benefit, the scales tip in favor of privacy, and the redactions are appropriate.<br><br>Nevertheless, the processor also redacted a general fax number at a BOP institution.   The fax number must be disclosed.  A copy of this page was released to Mr. Petrucelli with this information disclosed. |
| 221-229 | 102 (nine pages) | Released in Full | RIF | N/A | N/A |
| 230 (one page) | 103 | Memo:  Intake Screening (February 1, 2002) | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo concerns the intake screening of Mr. Petrucelli at MDC Brooklyn.  The privacy exemptions were used to redact the name of the author of the memo, a BOP staff member serving as an "Intake Screener."  The author of the memo has a strong privacy interest in having his/her identity withheld from the release of this law enforcement document. No countervailing public interest would be served by revealing the screener's identity; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions to support the redaction of the screener's name.  This was appropriate in the light of the very real dangers of physical harm faced by correctional workers. |
| 231 (one page) | 104 | Form:  Prisoner Remand. October 21, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form chronicles Mr. Petrucelli's transfer from MDC Brooklyn to MCC New York.  The processor used the privacy exemptions to redact:  (1) the name, address, and telephone number of Mr. Petrucelli's emergency contact, (2) the name and register number of a separatee, (3) the name and cell phone number of |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | a U.S. Marshal, and (4) the name and signature of a BOP staff member.  These individuals have strong privacy interests in having their identifying information withheld from the release of this law enforcement document.  No countervailing public interest exists in this information.<br><br>(b)(7)(F) was also used with the privacy exemptions to support the redaction of the BOP staff member's name.  This was appropriate in the light of the very real dangers of physical harm faced by correctional workers. |
| 232-233 | 105 (two pages) | USMS Form 129, Detention Report. February 22, 2003 | WIP | (b)(6), (b)(7)(C) | On this document, the processor used (b)(6) and (b)(7)(C) to redact:  (1) the name and register number of a separatee, (2) the name and telephone numbers of a federal agent, (3) the names of the AUSA and the defense attorney in Mr. Petrucelli's trial, and (4) the name of the presiding judge in Mr. Petrucelli's case.  Except for the federal judge, these individuals have a strong privacy interest in the withholding of their identifying information from the release of this law enforcement document.  There is no countervailing public benefit that outweigh the privacy interests at stake.<br><br>The processor redacted three occurrences (over two pages) of the presidentially-appointed trial judge's name.  Because of the public nature of the position of United States District Court Judge, that individual's privacy expectations are lowered and the public interest in his actions are heightened.  A copy of this page was released to Mr. Petrucelli with the identity of the judge disclosed. |

| 234 | 106 (one page) | Form:  Notice of Separation (date illegible) | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, (b)(6) and (b)(7)(C) were used to redact the signature of the staff member who witnessed Mr. Petrucelli's execution of the form.  This staff member has a strong privacy interest in having his identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, privacy prevails.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff member's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 235-236 | 107 (two pages) | Form:  Pretrial Inmate Work Waiver. October 21, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, (b)(6) and (b)(7)(C) were used to redact the signatures of the staff member who witnessed Mr. Petrucelli's execution of the form.  This staff member has a strong privacy interest in having her identifiers excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff member's signatures.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 237-238 | 108 (two pages) | Incident Report. November 16, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This document is an incident report that charged Mr. Petrucelli with violating the disciplinary code.  (b)(6) and (b)(7)(C) were used to redact staff names and signatures and to redact the name and federal register number of the third-party inmate involved in the incident.  These individuals have a strong privacy interest in having their names withheld from the release of this law enforcement document.  On the |

| | | | | | other hand, there is no public benefit in releasing these third party identifiers.  Thus, privacy trumps.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff members' signatures.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 239 | 109 (one page) | Notice of Inmate Rights at Discipline Hearing.  November 19, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This document serves to memorialize that an inmate has been advised of his rights at a hearing before the Disciplinary Hearing Officer (DHO).  (b)(6) and (b)(7)(C) were used to redact a staff name and accompanying signature.  This individual has a strong privacy interest in having his name withheld from the release of this law enforcement document.  On the other hand, there is no public benefit in releasing the name.  The scale tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff member's name and signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 240 | 110 (one page) | Notice of Hearing Before the DHO.  November 19, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This record notifies an inmate of an impending DHO hearing and otherwise records whether the inmate would like a staff representative or to call witnesses.  (b)(6) and (b)(7)(C) were used to redact a staff name and accompanying signature.  This individual has a strong privacy interest in having his name withheld from the release of this law enforcement document.  On the other hand, there is no public benefit in releasing these third party identifiers.  One the balance, privacy prevails. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used with the privacy exemptions on the BOP staff member's name and signature. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 241 | 111 (one page) | Form: Administrative Detention Order. March 5, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form records the reasons for detaining an inmate in the Special Housing Unit (SHU) on Administrative Detention status. The privacy exemptions were applied to two instances each of a Caseworker's name and signature and a single occurrence of the name of a Correctional Counselor. The Caseworker and Counselor have strong privacy interests in having their identifiers excluded from the release of this law enforcement document. Although there may be a public benefit in having a record of why an inmate was restricted to the SHU, the staff members' identifiers add nothing to that body of knowledge. Thus, the scale tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff members' names. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 242-244 | 112 (three pages) | DHO Report. December 17, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This three-page report records the findings and conclusion of the DHO in Mr. Petrucelli's disciplinary case. The privacy exemptions were used to redact the names of a Lieutenant, a Counselor, the third-party inmate/victim, and the name and two signatures of the DHO. These individuals have strong privacy interests in having their names withheld from the release of this law enforcement document. There is no public benefit to releasing these identifiers because the reports shows that Petrucelli was treated with fundamental fairness and due process even without the identifiers. |

| Bates page # | Doc. # | Description | Treatment | Exemptions | Justification |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used with the privacy exemptions on the BOP staff members' names.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 245 | 113 (one page) | DHO Memo:  Restricted Commissary Privileges.  November (day illegible), 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this memo, the DHO alerts the business office that Mr. Petrucelli is being sanctioned.  The DHO's name and signature were redacted pursuant to (b)(6) and (b)(7)(C).  The DHO has a strong privacy interest in having his identifiers withheld from the release of this law enforcement document.  There is no countervailing public interest in the DHO's identifiers.<br><br>(b)(7)(F) was also used with the privacy exemptions on the DHO's printed name and signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |

FOIA Request 2017-00843
(The Remainder of the Central File; Released December 8, 2016
Bates pages 1-261
Released in Full (RIF), Disclosed in Part (DIP), Withheld in Part (WIP), Withheld in Full (WIF)

| Bates page # | Doc. # | Description | Treatment | Exemptions | Justification |
|---|---|---|---|---|---|
| 1-2 | 1 (two pages) | SENTRY report:  Sentence Computation | WIP (page one); RIF (page two) | (b)(6), (b)(7)(C) | On the first page of this two-page document, the processor used (b)(6) and (b)(7)(C) to redact the name of the presiding judge in Mr. Petrucelli's case.  Because of the public nature of the position of United States District Court Judge, that individual's privacy expectations are lowered and the public interest in his actions are heightened.  A copy of this page was released in full to Mr. Petrucelli with the identity of the judge disclosed. |

| 3-7 | 2 (five pages) | Judgment in a Criminal Case. February 25, 2003 | WIP (pages 3, 6-7); RIF (pages 4-5) | (b)(6), (b)(7)(C) | On this Judgment and Commitment Order, the processor used (b)(6) and (b)(7)(C) to redact: (1) the name of the prosecutor, (2) the name of Mr. Petrucelli's defense attorney, (3) the signature and name of the federal trial judge, (4) the signature of an unknown individual, and (5) the name of the payee of a restitution order. The unknown signature on page one is accompanied with the date April 10, 2003. Nothing about the signature suggests that it is fictitious; therefore, it is most likely the signature of a BOP line staff member involved in inmate intake.

The privacy exemptions were properly used on Bates page three to redact the names of the trial attorneys and the unknown signature. They were also properly used on pages six through seven to redact the recipient of the restitution order, who was probably a victim. These individuals have strong privacy interests in having their identifiers withheld from the release of this law enforcement record. There is no countervailing public benefit in releasing this information.

Nevertheless, because of the public nature of the position of United States District Court Judge, that individual's privacy expectations are lowered and the public interest in his actions are heightened. A copy of Bates page three of this record was released to Mr. Petrucelli with the identity of the judge disclosed. |
| 8 | 3 (one page) | Warrant for Arrest. January 28, 2002 | WIP | (b)(6), (b)(7)(C) | On this single-page warrant for arrest, the processor used the privacy exemptions to redact the names of: |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (1) the ordering judge, (2) a U.S. Magistrate Judge, and (3) the Clerk of Court.  She also redacted the signature of the deputy clerk.  The public-facing nature of the official business of the judges and the Clerk of Court lessens the privacy interests of those individuals.  Because of their relative stature, information concerning the work of the judges and the Clerk is more likely to render a public benefit.  This page will be released with the identities of these individuals revealed.<br><br>Nothing on this document suggests that the deputy clerk was acting on behalf of the Clerk when he signed this document.  The deputy's duties are less public-facing than the duties of the Clerk of Court.  It is submitted that (b)(6) and (b)(7)(C) were properly used by the processor to protect the deputy's privacy in this law enforcement document.  On the other hand, the release of the deputy's signature would not add to a definable public benefit.  On balance, the scales tip in favor of the deputy's privacy. |
| 9 | 4 (one page) | USAO Fax Cover sheet.  January 31, 2002. | WIP | (b)(6), (b)(7)(C) | At the outset, the BOP concedes that (b)(6) and (b)(7)(C) were improperly used to redact BOP and USAO office fax numbers.  These numbers will be released; therefore, no justification is needed.<br><br>The processor properly used the privacy exemptions to redact the name and direct phone number of an AUSA and the name of a BOP staff member.  These individuals have strong privacy interests in having their identities withheld from this law enforcement record.  The "zone" of privacy extends to the |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | AUSA's direct phone line because release could or would lead to harassment:  the AUSA has an interest in not being harried as he conducts his official duties.  There is no public benefit to releasing the identities and the direct phone number; therefore, privacy prevails. |
| 10-11 | 5 (two pages) | Form:  Inmate Financial Plan (IFRP).  September 30, 2014 | WIP (page one); RIF (page two) | (b)(6), (b)(7)(C), (b)(7)(F) | On page one of this form, the processor used (b)(6) and (b)(7)(C), to redact the signature of the staff member who witnessed Mr. Petrucelli's signature.  The staff witness has a strong privacy interest in having his or her signature withheld from the release of this law enforcement document.  There is no countervailing public interest in the witness's identity.<br><br>(b)(7)(F) was also used with the privacy exemptions on the witness's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 12 | 6 (one page) | Correspondence:  Statement of Inmate Account.  June 4, 2004 | WIP | (b)(6), (b)(7)(C) | On this correspondence from the USAO, the processor used (b)(6) and (b)(7)(C) to redact the name of a Financial Litigation Agent responsible for tracking the payment of Mr. Petrucelli's financial penalties.  Because the Agent does not have public-facing or policymaking responsibilities, she has a strong privacy interest in having her name withheld from the release of this law enforcement document.  There is no public benefit in releasing the Agent's name.  While there may be legitimate interest in whether inmates pay their fines and restitution, the identity of the Agent does not add to that.  Accordingly, privacy outweigh the public's need to know. |

| 13 | 7 (one page) | Correspondence: Statement of Inmate Account.  March 12, 2004 | WIP | (b)(6), (b)(7)(C) | On this correspondence from the USAO, the processor used (b)(6) and (b)(7)(C) to redact the name of a Financial Litigation Agent responsible for tracking the payment of Mr. Petrucelli's financial penalties.  The Agent has a strong privacy interest in having her name withheld from the release of this law enforcement document.  There is no countervailing public benefit in releasing the Agent's name. |
| 14 | 8 (one page) | Correspondence: Statement of Inmate Account.  December 5, 2003 | WIP | (b)(6), (b)(7)(C) | On this correspondence from the USAO, the processor used (b)(6) and (b)(7)(C) to redact the name of a Financial Litigation Agent responsible for tracking the payment of Mr. Petrucelli's financial penalties.  The Agent has a strong privacy interest in having her name withheld from the release of this law enforcement document.  There is no countervailing public benefit in releasing the Agent's name. |
| 15 | 9 (one page) | Correspondence: Statement of Inmate Account.  November 24, 2004 | WIP | (b)(6), (b)(7)(C) | On this correspondence from the USAO, the processor used (b)(6) and (b)(7)(C) to redact the name of a Financial Litigation Agent responsible for tracking the payment of Mr. Petrucelli's financial penalties.  The Agent has a strong privacy interest in having her name withheld from the release of this law enforcement document.  There is no countervailing public benefit in releasing the Agent's name. |
| 16 | 10 (one page) | Correspondence Concerning Inmate's Location and Employment.  March 13, 2003 | WIP | (b)(6), (b)(7)(C) | The BOP concedes that the privacy exemptions should not have been applied to the name of the U.S. Attorney for the Southern District of New York.  This page was released to Mr. Petrucelli with that redaction removed. |

| | | | | | Nevertheless, the processor properly applied (b)(6) and (b)(7)(C) to redact the name of an AUSA and the Financial Litigation Agent handling Petrucelli's case. These individuals have strong privacy interests in having their identifiers removed from this law enforcement document. There is no countervailing public benefit in releasing the names. Thus, privacy outweighs the public interest. |
|---|---|---|---|---|---|
| 17-24 | 11 (eight pages) | FBI Rap Sheet, etc. | RIF | N/A | N/A |
| 25 | 12 (one page) | Inmate Activity Record. July 14, 2014-July 14, 2016 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This activity log shows the dates of Mr. Petrucelli's Program Reviews. The processor used (b)(6) and (b)(7)(C) to redact the initials and signatures of staff who conducted the reviews. These BOP staff members have strong privacy interests in having their signatures withheld from the release of this law enforcement document. There is no countervailing public interest in the staff members' identities.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff members' signatures. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 26 | 13 (one page) | Inmate Activity Record. June 28, 2012-January 22, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This activity log shows the date of Mr. Petrucelli's initial designation and the dates of four Program Reviews. The processor used (b)(6) and (b)(7)(C) to redact the initials and signatures of staff members who conducted the reviews and noted the designation. These BOP staff members have strong privacy interests in having their signatures withheld from the release of this law enforcement document. There is no countervailing public interest in the staff members' identities. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used with the privacy exemptions on the staff members' signatures.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 27 | 14 (one page) | Inmate Activity Record. March 12, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This activity log shows the date of one of Mr. Petrucelli's Program Reviews.  The processor used (b)(6) and (b)(7)(C) to redact the initials and signatures of the three staff members who conducted the review.  These BOP staff members have strong privacy interests in having their signatures withheld from the release of this law enforcement document.  There is no countervailing public interest in the staff members' identities.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff members' signatures.  This was appropriate in the light of the threats to physical safety inherent in working in a prison. |
| 28 | 15 (one page) | Inmate Activity Log. September 21, 2010-October 10, 2011 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This activity log shows the dates of three of Mr. Petrucelli's Program Reviews, one Central File review, and a notation concerning Mr. Petrucelli's participation in an Inmate Financial Responsibility Plan (IFRP).  The processor used (b)(6) and (b)(7)(C) to redact the initials and signatures of the staff members who conducted these reviews.  These BOP staff members have strong privacy interests in having their signatures withheld from the release of this law enforcement document.  There is no countervailing public interest in the staff members' identities. |

| | | | | | (b)(7)(F) was also used with the privacy exemptions on the staff members' signatures. This was appropriate in the light of the threats to physical safety inherent in working in a prison. |
|---|---|---|---|---|---|
| 29 | 16 (one page) | Inmate Activity Log. May 7, 2009-April 30, 2010 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This Inmate Activity Log shows the dates of three of Mr. Petrucelli's Program Reviews and an initial assessment of his file at USP Canaan. The processor used (b)(6) and (b)(7)(C) to redact the initials and signatures of the staff members who conducted the reviews and the assessment. These BOP staff members have strong privacy interests in having their signatures withheld from the release of this law enforcement document. There is no countervailing public interest in the staff members' identities.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff members' signatures. This was appropriate in the light of the threats to physical safety inherent in working in a prison. |
| 30 | 17 (one page) | Inmate Activity Log. March 16, 2007- September 19, 2009 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This Inmate Activity Log shows the dates of one of Mr. Petrucelli's Program Reviews and two meetings regarding his IFRP. The processor used (b)(6) and (b)(7)(C) to redact the initials and signatures of the staff members who conducted the meetings. These BOP staff members have strong privacy interests in having their signatures withheld from the release of this law enforcement document. There is no countervailing public interest in the staff members' identities.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff members' signatures. This was |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | appropriate in the light of the threats to physical safety inherent in working in a prison. |
| 31 | 18 (one page) | Inmate Activity Log. December 7, 2004-September 29, 2006. | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This Inmate Activity Log shows the dates of four IFRP meetings and one of Mr. Petrucelli's Program Reviews.  (b)(6) and (b)(7)(C) were used to redact the initials and signatures of the staff members who conducted the meetings.  These BOP staff members have strong privacy interests in having their signatures withheld from the release of this law enforcement document.  There is no countervailing public interest in the staff members' identities.  (b)(7)(F) was also used with the privacy exemptions on the staff members' signatures.  This was appropriate in the light of the threats to physical safety inherent in working in a prison. |
| 32 | 19 (one page) | Inmate Activity Log. March 19, 2003-September 29, 2004 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This Inmate Activity Log shows the dates of four of Mr. Petrucelli's Program Reviews and a legal call Mr. Petrucelli made using an unmonitored phone line.  (b)(6) and (b)(7)(C) were used to redact the initials and signatures of the staff members who conducted the meetings.  They were also used to redact the name of the attorney Mr. Petrucelli spoke with.  These individuals have strong privacy interests in having their signatures and name withheld from the release of this law enforcement document.  There is no countervailing public interest in the staff members' identities or the identity of Mr. Petrucelli's attorney.  (b)(7)(F) was also used with the privacy exemptions on the staff members' signatures.  This was |

| | | | | | appropriate in the light of the threats to physical safety inherent in working in a prison. |
|---|---|---|---|---|---|
| 33 | 20 (one page) | Inmate Activity Record. October 21, 2002. | RIF | N/A | N/A |
| 34 | 21 (one page) | Inmate Activity Log. February 2, 2002-January 21, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This Inmate Activity Log shows the date of an initial classification and three of Mr. Petrucelli's Program Reviews (called "Team Reviews" here). (b)(6) and (b)(7)(C) were used to redact the initials and signatures of the staff members who conducted the meetings.  These BOP staff members have strong privacy interests in having their signatures withheld from the release of this law enforcement document.  There is no countervailing public interest in the staff members' identities.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff members' signatures.  This was appropriate in the light of the threats to physical safety inherent in working in a prison. |
| 35 | 22 (one page) | In-Transit Data Form. June 25, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this transfer document, (b)(6) and (b)(7)(C) were used to redact the signatures of the staff member who prepared the transfer document and the transporting officer.  They were also used to redact the name of Mr. Petrucelli's designated emergency contact.  These individuals have strong privacy interests in having their names and signatures withheld from the release of this law enforcement document.  There is no countervailing public interest in the identities of these individuals.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff members' signatures.  This was |

| | | | | | appropriate in the light of the threats to physical safety inherent in working in a prison. <br><br> Nevertheless, the BOP must concede that (b)(7)(F) was improperly used as stand-alone authority to redact Mr. Petrucelli's classification of "separation" in two places and the redaction of the acronym "CMC," which stands for Case Management Coordinator.  These redactions were removed, and this page was released to Mr. Petrucelli as corrected. |
|---|---|---|---|---|---|
| 36 | 23 (one page) | Transfer Order.  August 4, 2010 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | At the outset, the BOP concedes that (b)(7)(F) was improperly used to redact Mr. Petrucelli's classification of "separation."  This redaction was removed and a corrected page was released to Mr. Petrucelli. <br><br> Nevertheless, (b)(6) and (b)(7)(C) were properly used to redact the name and signature of the staff member who returned service of the document.  This individual has a strong privacy interests in having his name and signature withheld from the release of this law enforcement document.  There is no countervailing public interest in the identity of this individual. <br><br> (b)(7)(F) was also used with the privacy exemptions on the BOP staff member's signature and name.  This was appropriate in the light of the threats to physical safety inherent in working in a prison. |
| 37 | 24 (one page) | Transfer Order.  April 28, 2009 | WIP | (b)(7)(F) | The BOP concedes that (b)(7)(F) was improperly used to redact Mr. Petrucelli's classification of "separation."  This redaction was removed and a corrected page was released to Mr. Petrucelli. |

| 38 | 25 (one page) | SENTRY Report "Clearance Data" January 8, 2013 | RIF | N/A | N/A |
|---|---|---|---|---|---|
| 39 | 26 (one page) | Form 409:  Request for Transfer.  November 26, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, the processor used exemptions (b)(6) and (b)(7)(C) to redact the signature and name of a Case Manager, the signature of an Acting Unit Manager, and the name of the Unit Manager.  These individuals have strong privacy interests in having their names and signatures withheld from the release of this law enforcement document.  There is no countervailing public interest in the identities of these individuals.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff members' signatures and names. This was appropriate in the light of the threats to physical safety inherent in working in a prison. |
| 40 | 27 (one page) | Form 409:  Request for Transfer.  June 14, 2010 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, the processor used exemptions (b)(6) and (b)(7)(C) to redact the signature and name of a Case Manager and the signature and name of a Unit Manager.  These individuals have strong privacy interests in having their names and signatures withheld from the release of this law enforcement document.  There is no countervailing public interest in the identities of these individuals.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff members' signatures and names. This was appropriate in the light of the threats to physical safety inherent in working in a prison. |
| 41 | 28 (one page) | Form:  Custody Classification.  January 1, 2016 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, the processor used exemptions (b)(6) and (b)(7)(C) to redact two signatures by the chairperson of the custody review team.  This |

| | | | | | individual has a strong privacy interests in having his/her signatures withheld from the release of this law enforcement document. There is no countervailing public interest in the identity of this individuals.<br><br>(b)(7)(F) was also used with the privacy exemptions on the chairperson's signatures. This was appropriate in the light of the threats to physical safety inherent in working in a prison. |
|---|---|---|---|---|---|
| 42-58 | 29 (17 pages) | Inmate Skill Development Plan. March 27, 2012 | WIP (Bates pages 42, 44 & 58); RIF (Bates Pages 43, 45-57) | (b)(6), (b)(7)(C), (b)(7)(F) | On the first page of this comprehensive rehabilitation plan, the processor used the privacy exemptions to redact the names, addresses, and phone numbers of individuals Mr. Petrucelli designated as his emergency contact and the head-of-household of his projected release residence. These individuals have strong privacy interests in having their names and PII withheld from the release of this law enforcement document. There is no countervailing public interest in the identities of these individuals<br><br>With regard to this same page, the BOP concedes that the processor improperly used (b)(6) and (b)(7)(C) to redact the name of the Chief Probation Officer for the Southern District of New York. This page was released with this redaction removed.<br><br>On the third page of this document (Bates page 44), the processor used the privacy exemptions to redact the name of the DHO and the name and register number of the inmate-victim from Mr. Petrucelli's 2002 prison disciplinary infraction of assault. These |

<table>
<tr><td></td><td></td><td></td><td></td><td></td><td>

individuals have strong privacy interests in having their names and signatures withheld from the release of this law enforcement document. There is no countervailing public interest in the identities of these individuals.

(b)(7)(F) was also used with the privacy exemptions on the DHO's name. This was appropriate in the light of the threats to physical safety inherent in working in a prison.

On the seventeenth page of this document (Bates page 58), (b)(6) and (b)(7)(C) were used to redact the printed names and signature of a Case Manager and a Unit Manager. They were also used to redact the direct telephone-extension numbers for these staff members. These unit team members have strong privacy interests in their identifiers and direct-extension contact numbers. Release of this information in this law enforcement document could lead to harassment or other unwarranted invasions of privacy. There is no public benefit to releasing these names or numbers. While the public may be interested to learn about rehabilitation plans used by the BOP, the staff identifiers add nothing to that.

Finally, (b)(7)(F) was also used on the staff names and signatures of the Case and Unit Managers. This was appropriate to protect the lives and physical safety of these correctional workers.
</td></tr>
</table>

| 59-61 | 30 (three pages) | Individualized Reentry Plan. July 12, 2016 | WIP (Bates pages 59 | (b)(6), (b)(7)(C), (b)(7)(F) | On the first page of this document, (b)(6) and (b)(7)(C) was used to redact the name, address, and phone number of Mr. Petrucelli's primary contact in |

| | | | | | |
|---|---|---|---|---|---|
| | | | & 61); RIF (page 60) | | case of death.  This individual has a strong privacy interest in having her indentifiers and contact information withheld from the release of this law enforcement document.<br><br>The BOP concedes that (b)(7)(F) was improperly used as stand-alone authority to redact Mr. Petrucelli's classification of "separation."  This redaction was removed and a corrected page was released to Mr. Petrucelli.  (b)(7)(F) was properly used on this page to redact information regarding a statutory classification that is likely to endanger life or physical safety.  <u>See</u> Wirth declaration, p. 24, n. 5.<br><br>On the third page of this document (Bates page 61), the privacy exemptions were used to redact the signatures of a Unit Manager and a Case Manager.  These corrections workers have strong privacy interest in having their names withheld from this law enforcement document.  There is no countervailing public benefit to including these names in the release.  Therefore, individual privacy outweighs the public's need to know.<br><br>(b)(7)(F) was also used on the staff names and signatures of the Case and Unit Managers.  This was appropriate to protect the lives and physical safety of these correctional workers. |
| 62 | 31 (one page) | Signature Sheet from Inmate Skills Development Plan. January 12, 2016 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used to redact the printed names and signature of a Case Manager and a Unit Manager.  They were also used to redact the direct telephone-extension numbers for these staff |

| | | | | | members. These unit team members have strong privacy interests in their identifiers and direct-extension contact numbers. Release of this information in this law enforcement document could lead to harassment or other unwarranted invasions of privacy. There is no public benefit to releasing these names or numbers. While the public may be interested to learn about rehabilitation plans used by the BOP, the staff identifiers add nothing to that.<br><br>Finally, (b)(7)(F) was also used on the staff names and signatures of the Case and Unit Managers. This was appropriate to protect the lives and physical safety of these correctional workers. |
|---|---|---|---|---|---|
| 63 | 32 (one page) | Memo: Education Recommendations. February 23, 2006 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this memo, (b)(6) and (b)(7)(C) were used to redact the printed names of a Teacher and a Unit Manager and the signature of the Teacher. These BOP staff members have strong privacy interests in their identifiers. Release of this information in this law enforcement document could lead to harassment or other unwarranted invasions of privacy. There is no public benefit to releasing these names or the signature. While the public may be interested to learn about inmate education, the BOP staff identifiers add nothing to that.<br><br>(b)(7)(F) was also used on the staff names and the signature. This was appropriate to protect the physical safety of these correctional workers. |
| 64 | 33 (one page) | SENTRY Report: Security Designation | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP must concede that the processor improperly used (b)(7)(F) to redact the classification of "separation." The processor also misapplied (b)(6) and (b)(7)(C) to the name of Mr. Petrucelli's |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | trial judge and the name of a disruptive group, also known as a gang.  This page was released to Mr. Petrucelli with this information unredacted.<br><br>Nevertheless, (b)(7)(F) was properly used to redact the names of two gangs.  Membership or affiliation with a street or prison gang is a matter that could reasonably be expected to endanger the life or physical safety of any individual. |
| 65-81 | 34 (seventeen pages) | Presentence Investigation Report (PSR) | WIF | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP concedes that exemptions (b)(6) and (b)(7)(C) do not support withholding in full of Mr. Petrucelli's PSR.  Nevertheless, the BOP contends that physical safety concerns and the authority of (b)(7)(F) support a finding that withholding in full was appropriate.  *See Schotz v. Samuels*, 72 F. Supp. 3d 81, 89 (D.D.C. 2014).  In 2002, the BOP declared PSRs and the sentencing court's Statement of Reasons (SOR) to be contraband "to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes." BOP Program Statement 1351.05, p. 2 ¶ 2 (2002). The prohibition on inmate retention of copies of PSRs stifles predatory inmates from coercing weaker inmates into showing PSRs and SORs.  This had to be applied to all inmates so that an unwillingness to show the documents could not be deemed an unwillingness because the weaker inmate—for example—cooperated with the Government, possessed substantial financial resources, or had a past sexual offense involving minors.  This information, loose on a prison compound "could reasonably be expected to |

|  |  |  |  |  | endanger the life or physical safety of any individual."  (b)(7)(F).

Mr. Petrucelli can access his PSR through the local access procedures described at 28 C.F.R. § 513.40 and Wirth Declaration ¶ 8.  This access is sufficient to satisfy the FOIA.  *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 625 (D.C. Cir. 2006) ("FOIA does not entitle [requester] to have copies of his PSRs" as long as he is "afforded a meaningful opportunity to review his PSRs and to take notes on them . . . .  Moreover, the BOP Program Statement 1351.05 p. [16-17] . . . sets forth reasons, based on concerns about inmate safety . . . that a court would be loath to second-guess.") (citations omitted).

Finally, the BOP is prohibited by the U.S. Courts from further publication or dissemination of the PSR.  Court-stamped language on the face of the PSR reads:  "This report is a confidential document.  It cannot be used in any way other than the purpose for which it was released.  Further disclosure is prohibited by the court."  It is submitted that this language leaves the BOP no discretion to release this document in response to a FOIA request.  While Fed. R. Crim. P. 32(i)(3)(C) contemplates the sentencing court's sharing of PSRs with the BOP, that is for classification and programming purposes, not republication in a FOIA release.  Rule 32 otherwise provides for the exclusion of certain sensitive types of information from the PSR.  <u>See</u> Rule 32(d)(3). |
|---|---|---|---|---|---|

| 82 | 35 (one page) | Social Security Card Mailer.  April 11, 2011 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this correspondence from the Social Security Administration to Mr. Petrucelli, the processor redacted the staff member's name who received the mail for him.  Establishing legitimate credentials for inmates is an element of the BOP rehabilitation and reentry programming.  The staff member has a strong privacy interest in having his/her name withheld from the release of this record.  On the other hand, there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff member's name.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 83-84 | 36 (two pages) | Inmate Visitor List.  June 5, 2015 | WIP (page one); RIF (page two) | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the names of the BOP staff members who approved Mr. Petrucelli's visitors and the names and all of the PII of all of those visitors.  The staff members and the visitors have strong privacy interests in having their identities withheld from release.  The visitors have legitimate expectations in the protection of their PII, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff members' names.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 85 | 37 (one page) | Form:  Denial of Proposed Visitor. January 7, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form records a decision to deny visiting privileges to a third party seeking to visit Mr. Petrucelli in prison.  (b)(6) and (b)(7)(C) were used to redact the name of a Unit Manager and the |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Manager's signature.  This individual has a legitimate privacy interest in having his/her identifying information withheld from the release of this law enforcement document.  On the other hand, there is no public benefit in releasing this identifying information.  While the public may have an interest in knowing that prisons are run humanely and that visitation is allowed, the release of this case-specific identifying information does not add to that.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff name and signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 86 | 38 (one page) | Memo:  Approved Visit. March 13, 2007 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the name and signature of a Unit Manager and name and telephone number of one of Mr. Petrucelli's prison visitors.  The staff member and the visitor have strong privacy interests in having their identities withheld from release.  The visitor has a legitimate expectation of the protection of his telephone number, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 87 | 39 (one page) | Memo:  Approved Visit. March 7, 2005 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the name and signature of a Unit Manager and names of two of Mr. Petrucelli's prison visitors.  A telephone number for one of the visitors was also redacted |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | pursuant to the privacy exemptions. The staff member and the visitors have strong privacy interests in having their identities withheld from release. The visitor has a legitimate expectation of the protection of his telephone number, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature. This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 88 | 40 (one page) | Memo:  Approved Visit. January 11, 2005 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the name and signature of a Unit Manager and names of two of Mr. Petrucelli's prison visitors. A telephone number for one of the visitors was also redacted pursuant to the privacy exemptions. The staff member and the visitors have strong privacy interests in having their identities withheld from release. The visitor has a legitimate expectation of the protection of his telephone number, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature. This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 89 | 41 (one page) | Memo:  Inmate Correspondence Approval.  October 9, 2003 | WIP | (b)(6), (b)(7)(C) | In this letter, the Warden of USP Lewisburg communicates his approval of Mr. Petrucelli's wish to communicate with an inmate in the custody of the State of New York.  (b)(6) and (b)(7)(C) were used here to protect the name (two redactions) of the |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Superintendent of the New York Prison and the name and identification number of the New York inmate.<br><br>The New York inmate has a strong privacy interest in having his identity withheld from release of this law enforcement record, and there is no countervailing public benefit in releasing this information.<br><br>The BOP concedes that the name of the Superintendent of the New York Prison should have been released. A copy of this page with the two redactions removed was given to Mr. Petrucelli. |
| 90 | 42 (one page) | Memo:  Inmate to Inmate Correspondence. September 10, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP concedes that the name of NY Commissioner of Correctional Services should have been released. Also, the name and signature of the Superintendent of the NY prison should have been released. Nevertheless, no new release is needed because these improper redactions were removed and the page was released in following an OIP remand. The release following remand is numbered 2017-03853, <u>see</u> Vaughn pp. 152-53. The release was made on 11 June 2018.<br><br>The processor properly applied (b)(6) and (b)(7)(C) to the name of the third-party NY inmate and the name and signature of the NY Correctional Counselor. These individuals have strong privacy interests in having their identifier withheld from the release of this law enforcement document. There is not countervailing public benefit in releasing these identifiers. |

| | | | | | (b)(7)(F) was also used to excise the name and signature of the Correctional Counselor. This was apt in the light of the risks of physical harm that are inherent with working inside a prison. |
|---|---|---|---|---|---|
| 91 | 43 (one page) | Memo:  Approved Legal Visit.  August 15, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the name of a Unit Manager and the signature of an acting Unit Manager.  The privacy exemptions were also used to excise the name and direct-line telephone number of Mr. Petrucelli's visiting attorney.  The staff members and the visiting attorney have strong privacy interests in having their identities withheld from the release of this law enforcement document.  The visitor has a legitimate expectation of the protection of his telephone number, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and the signature of the acting Unit Manager.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 92 | 44 (one page) | Memo:  Approved Legal Visit.  August 11, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were used here to protect the name of a Unit Manager and the signature of an acting Unit Manager.  The privacy exemptions were also used to excise the name and direct-line telephone number of Mr. Petrucelli's visiting attorney.  The staff members and the visiting attorney have strong privacy interests in having their identities withheld from the release of this law enforcement document.  The visitor has a legitimate expectation of the protection of his |

| | | | | | telephone number, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and the signature of the acting Unit Manager.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 93 | 45 (one page) | Memo:  Approved Legal Visit.  May 21, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were used here to protect the name and signature of a Unit Manager and the name and direct-line telephone number of Mr. Petrucelli's visiting attorney.  The staff member and the visiting attorney have strong privacy interests in having their identities withheld from the release of this law enforcement document.  The visitor has a legitimate expectation of the protection of his telephone number, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 94 | 46 (one page) | Memo:  Approved Legal Visit.  May 15, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were used here to protect the name and signature of a Unit Manager and the name and direct-line telephone number of Mr. Petrucelli's visiting attorney.  The staff member and the visiting attorney have strong privacy interests in having their identities withheld from the release of this law enforcement document.  The visitor has a legitimate expectation of the protection of his telephone number, and there is no |

| | | | | | countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 95 | 47 (one page) | Memo:  Approved Legal Visit.  April 23, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were used here to protect the name and signature of a Unit Manager and the name and direct-line telephone number of Mr. Petrucelli's visiting attorney.  The staff member and the visiting attorney have strong privacy interests in having their identities withheld from the release of this law enforcement document.  The visitor has a legitimate expectation of the protection of his telephone number, and there is no countervailing public benefit to be gained by releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 96 | 48 (one page) | Memo:  Approved Legal Visit.  April 22, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were used here to protect the name and signature of a Unit Manager and the name and direct-line telephone number of Mr. Petrucelli's visiting attorney.  The staff member and the visiting attorney have strong privacy interests in having their identities withheld from the release of this law enforcement document.  The visitor has a legitimate expectation of the protection of his telephone number, and there is no |

| | | | | | countervailing public benefit to be gained by releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 97 | 49 (one page) | Memo:  Approved Legal Visit.  April 16, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were used here to protect the name and signature of a Unit Manager and the name and direct-line telephone number of Mr. Petrucelli's visiting attorney.  The staff member and the visiting attorney have strong privacy interests in having their identities withheld from the release of this law enforcement document.  The visitor has a legitimate expectation in the protection of his telephone number, and there is no countervailing public benefit to be gained by releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 98 | 50 (one page) | Memo:  Approved Legal Visit.  March 26, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were used here to protect the name of a Unit Manager and the signature of an acting Unit Manager.  The privacy exemptions were also used to excise the name and direct-line telephone number of Mr. Petrucelli's visiting attorney.  The staff members and the visiting attorney have strong privacy interests in having their identities withheld from the release of this law enforcement document.  The visitor has a legitimate expectation of the protection of his |

| | | | | | telephone number, and there is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and the signature of the acting Unit Manager. This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 99-100 | 51 (two pages) | Form: Acknowledgement of Inmate. June 28, 2012 | RIF (page one); WIP (page two) | (b)(6), (b)(7)(C), (b)(7)(F) | On this form that explains prison rules regarding correspondence, phone monitoring, and inmate trust-fund accounts, (b)(6) and (b)(7)(C) were used to excise three staff signatures and the PII of Mr. Petrucelli's emergency contact. The staff members who signed the document and the emergency contact have strong privacy interests in having their identifiers withheld from the release of this law enforcement document. There is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff signatures. This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 101-102 | 52 (two pages) | Form: Acknowledgement of Inmate. September 13, 2010 | RIF (page one); WIP (page two) | (b)(6), (b)(7)(C), (b)(7)(F) | On this form that explains prison rules regarding correspondence, phone monitoring, and inmate trust-fund accounts, (b)(6) and (b)(7)(C) were used to excise two staff signatures and the PII of Mr. Petrucelli's emergency contacts. The staff members who signed the document and the emergency contacts have strong privacy interests in having their identifiers withheld from the release of this law enforcement document. There is no countervailing public benefit in releasing this information. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used with the privacy exemptions on the staff signatures.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 103-104 | 53 (two pages) | Form:  Acknowledgement of Inmate.  May 7, 2009 | RIF (page one); WIP (page two) | (b)(6), (b)(7)(C), (b)(7)(F) | On this form that explains prison rules regarding correspondence, phone monitoring, and inmate trust-fund accounts, (b)(6) and (b)(7)(C) were used to excise two staff signatures and the PII of Mr. Petrucelli's emergency contacts.  The staff members who signed the document and the emergency contacts have strong privacy interests in having their identifiers withheld from the release of this law enforcement document.  There is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff signatures.  This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 105-106 | 54 (two pages) | Form:  Acknowledgement of Inmate.  March 5, 2003 | RIF (page one); WIP (page two) | (b)(6), (b)(7)(C), (b)(7)(F) | On this form that explains prison rules regarding correspondence, phone monitoring, and inmate trust-fund accounts, (b)(6) and (b)(7)(C) were used to excise two staff printed names, eleven staff signatures and the PII of Mr. Petrucelli's emergency contact.  The staff members who signed the document and the emergency contact have strong privacy interests in having their identifiers withheld from the release of this law enforcement document.  There is no countervailing public benefit in releasing this information. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used with the privacy exemptions on the staff signatures. This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 107-108 | 55 (two pages) | Form: Acknowledgement of Inmate. February 4, 2003 | RIF (page one); WIP (page two) | (b)(6), (b)(7)(C), (b)(7)(F) | On page two of this acknowledgement form, (b)(6) and (b)(7)(C) were used to excise two staff printed names, two staff signatures, and the PII of Mr. Petrucelli's emergency contact. The staff members who signed the document and the emergency contact have strong privacy interests in having their identifiers withheld from the release of this law enforcement document. There is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff names and signatures. This was appropriate in the light of the risks to physical safety inherent with working in a prison. |
| 109-110 | 56 (two pages) | Form: Acknowledgement of Inmate. October 21, 2002 | WIP (page one); RIF (page two) | (b)(6), (b)(7)(C), (b)(7)(F) | On this form that explains prison rules regarding correspondence, phone monitoring, and inmate trust-fund accounts, (b)(6) and (b)(7)(C) were used to excise three staff signatures and the PII of Mr. Petrucelli's emergency contact. The staff members who signed the document and the emergency contact have strong privacy interests in having their identifiers withheld from the release of this law enforcement document. There is no countervailing public benefit in releasing this information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff signatures. This was appropriate in the light of the risks to physical safety inherent with working in a prison. |

| 111 | 57 (one page) | Form:  Acknowledgement of Inmate.  January 31, 2002 | RIF | N/A | N/A |
|-----|---------------|------------------------------------------------------|-----|-----|-----|
| 112 | 58 (one page) | Inmate Personal Property Record.  August 16, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the printed name and signature of the staff member who reviewed the inventory with Mr. Petrucelli.  This staff member has a legitimate privacy interest in having her identifiers excluded from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.<br><br>(b)(7)(F) was also used to excise the staff member's identifiers.  This was apt in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 113 | 59 (one page) | Inmate Personal Property Record.  June 28, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the printed name and signature of the staff member who reviewed the inventory with Mr. Petrucelli.  This staff member has a legitimate privacy interest in having his/her identifiers excluded from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.<br><br>(b)(7)(F) was also used to excise the staff member's identifiers.  This was apt in the light of the inherent risks to physical safety that are faced by correctional workers. |

| 114 | 60 (one page) | Inmate Personal Property Record.  September 13, 2010 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the printed name and signature of the staff member who reviewed the inventory with Mr. Petrucelli.  This staff member has a legitimate privacy interest in having his/her identifiers excluded from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.<br><br>(b)(7)(F) was also used to excise the staff member's identifiers.  This was apt in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 115 | 61 (one page) | Inmate Personal Property Record.  September 14, 2010 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the printed names and signatures of the two staff member who reviewed the inventory with Mr. Petrucelli.  These staff members have legitimate privacy interests in having their personal identifiers excluded from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.<br><br>(b)(7)(F) was also used to excise the staff members' identifiers.  This was apt in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 116 | 62 (one page) | Inmate Personal Property Record.  September 14, 2010 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the printed names and signatures |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | of the two staff member who reviewed the inventory with Mr. Petrucelli.  These staff members have legitimate privacy interests in having their personal identifiers excluded from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.  (b)(7)(F) was also used to excise the staff members' identifiers.  This was apt in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 117 | 63 (one page) | Inmate Personal Property Record.  June 4, 2009 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the printed name and signature of the staff member who reviewed the inventory with Mr. Petrucelli.  This staff member has a legitimate privacy interest in having his/her identifiers excluded from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.  (b)(7)(F) was also used to excise the staff member's identifiers.  This was apt in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 118 | 64 (one page) | Inmate Personal Property Record.  May 7, 2009 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the printed name and signature of the staff member who reviewed the inventory with Mr. Petrucelli.  This staff member has a legitimate privacy interest in having his/her identifiers |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | excluded from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.<br><br>(b)(7)(F) was also used to excise the staff member's identifiers.  This was apt in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 119 | 65 (one page) | Inmate Personal Property Record.  March 13, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the printed names and signatures of the two staff member who reviewed the inventory with Mr. Petrucelli.  These staff members have legitimate privacy interests in having their personal identifiers excluded from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.<br><br>(b)(7)(F) was also used to excise the staff members' identifiers.  This was apt in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 120 | 66 (one page) | Inmate Personal Property Record.  February 24, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the signature of the staff member who reviewed the inventory with Mr. Petrucelli.  This staff member has a substantial privacy interest in having his/her identifier withheld from the release of this document.  There is no offsetting public benefit in releasing the identifier.  On the balance, privacy interests prevail. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used to excise the staff member's signature.  This was proper in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 121 | 67 (one page) | Inmate Personal Property Record.  February 14, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the signature of the staff member who reviewed the inventory with Mr. Petrucelli.  This staff member has a substantial privacy interest in having his/her identifier withheld from the release of this document.  There is no offsetting public benefit in releasing the identifier.  On the balance, privacy interests prevail.  <br><br> (b)(7)(F) was also used to excise the staff member's signature.  This was proper in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 122 | 68 (one page) | Inmate Personal Property Record.  March 5, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the printed name and the signature of the staff member who reviewed the inventory with Mr. Petrucelli.  This staff member has a substantial privacy interest in having his identifiers withheld from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.  <br><br> (b)(7)(F) was also used to excise the staff member's name and signature.  This was proper in the light of |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | the inherent risks to physical safety that are faced by correctional workers. |
| 123 | 69 (one page) | Inmate Personal Property Record. February 14, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the printed name and the signature of the staff member who reviewed the inventory with Mr. Petrucelli.  This staff member has a substantial privacy interest in having his/her identifiers withheld from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.<br><br>(b)(7)(F) was also used to excise the staff member's name and signature.  This was proper in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 124 | 70 (one page) | Inmate Personal Property Record. October 21, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the signature of the staff member who reviewed the inventory with Mr. Petrucelli.  This staff member has a substantial privacy interest in having his/her identifier withheld from the release of this document.  There is no offsetting public benefit in releasing the identifier.  On the balance, privacy interests prevail.<br><br>(b)(7)(F) was also used to excise the staff member's signature.  This was proper in the light of the inherent risks to physical safety that are faced by correctional workers. |

| 125 | 71 (one page) | Inmate Personal Property Record.  February 1, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the signatures of the two staff members who reviewed the inventory with Mr. Petrucelli.  These staff members have substantial privacy interest in having their identifiers withheld from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.<br><br>(b)(7)(F) was also used to excise the staff members' signatures.  This was proper in the light of the inherent risks to physical safety that are faced by correctional workers. |
| --- | --- | --- | --- | --- | --- |
| 126 | 72 (one page) | Inmate Personal Property Record.  February 1, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inventory of Mr. Petrucelli's personal property, the processor used exemptions (b)(6) and (b)(7)(C) to redact the signatures of the two staff members who reviewed the inventory with Mr. Petrucelli.  These staff members have substantial privacy interests in having their identifiers withheld from the release of this document.  There is no offsetting public benefit in releasing the identifiers.  On the balance, privacy interests prevail.<br><br>(b)(7)(F) was also used to excise the staff members' signatures.  This was proper in the light of the inherent risks to physical safety that are faced by correctional workers. |
| 127 | 73 (one page) | Acknowledgement of Receipt of Inmate Account Card.  September 13, 2010 | RIF | N/A | N/A |

| 128 | 74 (one page) | Acknowledgement of Right to File Claim.  July 11, 2012 | RIF | N/A | N/A |
|---|---|---|---|---|---|
| 129 | (75 (one page) | Notice:  Uniform Safety Regulations.  July 11, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, (b)(6) and (b)(7)(C) were used to redact the signature of the staff member who witnessed Mr. Petrucelli's execution of the notice.  This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.  (b)(7)(F) was also used with the privacy exemptions on the BOP staff member's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 130 | 76 (one page) | Checklist:  Admissions and Orientation Program.  July 11, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this checklist, (b)(6) and (b)(7)(C) were used to redact the signatures of the staff members who taught admissions and orientation classes to Mr. Petrucelli.  These staff members have strong privacy interests in having their identifiers excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this identifying information; therefore, the scales tip in favor of privacy.  (b)(7)(F) was also used with the privacy exemptions on the BOP staff members' signatures.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |

| 131 | 77 (one page) | Checklist:  Unit Admission and Orientation Program. June 28, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this training checklist, (b)(6) and (b)(7)(C) were used to protect the signatures of a Unit Officer, a Unit Manager, a Case Manager, and a Correctional Counselor.  These third parties have legitimate privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these individuals.<br><br>(b)(7)(F) was also used with the privacy exemption to protect the signatures of these BOP staff members.  This reflects the very real safety concerns that arise from working in prison. |
| 132 | 78 (one page) | Form:  Intake Screening. June 28, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | At the outset, the BOP concedes that (b)(7)(F) should not have been used to redact Mr. Petrucelli's answer to the question:  "ARE YOU A CIM CASE?"  This is question #3 on the inmate interview portion of the form.  This redaction was undone, and a copy of this corrected page was sent to Mr. Petrucelli.<br><br>(b)(7)(F) was properly used to redact Mr. Petrucelli's responses to interview questions other than Questions ## 1& 3.  It is the BOP's policy to redact all of these responses for all inmates because, if an official record shows—for example—that an inmate took certain actions or committed certain crimes, that information would endanger any inmate on any BOP prison compound.  The intake screening form responses (other than CIM status) have to be handled in the same was as PSRs because predatory inmates will use this information to extort, |

| | | | | | harass, or even justify—under the primitive rules of prison culture—assaulting another inmate.<br><br>Exemptions (b)(6) and (b)(7)(C) were properly used to redact the signature of the staff member who interviewed Mr. Petrucelli.  This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff member's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 133 | 79 (one page) | Form:  Intake Screening.  September 13, 2010 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP again concedes that (b)(7)(F) should not have been used to redact Mr. Petrucelli's answer to the question:  "ARE YOU A CIM CASE?"  This is question #3 on the inmate interview portion of the form.  This redaction was undone, and a copy of this corrected page was sent to Mr. Petrucelli.<br><br>(b)(7)(F) was properly used to redact Mr. Petrucelli's responses to interview questions other than Questions ##1 & 3.  The responses to these questions, regardless of what the responses are, could reasonably be expected to endanger the life or safety of any individual.<br><br>Exemptions (b)(6) and (b)(7)(C) were properly used to redact the signature of the Counselor who interviewed Mr. Petrucelli.  This staff member has a |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | strong privacy interest in having his/her identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff member's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 134 | 80 (one page) | Form:  Intake Screening. August 16, 2010 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | | The BOP again concedes that (b)(7)(F) should not have been used to redact Mr. Petrucelli's answer to the question:  "ARE YOU A CIM CASE?"  This is question #3 on the inmate interview portion of the form.  This redaction was undone, and a copy of this corrected page was sent to Mr. Petrucelli.<br><br>(b)(7)(F) was properly used to redact Mr. Petrucelli's responses to interview questions other than Questions ## 1 & 3.  The responses to these questions, regardless of what the responses are, could reasonably be expected to endanger the life or safety of any individual.  The interviewers comments were also properly redacted under this exemption.<br><br>Exemptions (b)(6) and (b)(7)(C) were properly used to redact the signature of the staff member who interviewed Mr. Petrucelli.  This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the |

| | | | | | release of this information; therefore, the scales tip in favor of privacy. |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used with the privacy exemptions on the BOP staff member's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 135 | 81 (one page) | Form:  Intake Screening.  March 5, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP again concedes that (b)(7)(F) should not have been used to redact Mr. Petrucelli's answer to the question:  "ARE YOU A CIM CASE?"  This is question #3 on the inmate interview portion of the form.  This redaction was undone, and a copy of this corrected page was sent to Mr. Petrucelli.<br><br>(b)(7)(F) was properly used to redact Mr. Petrucelli's responses to interview questions other than Questions ## 1 & 3.  The responses to these questions, regardless of what the responses are, could reasonably be expected to endanger the life or safety of any individual.<br><br>Exemptions (b)(6) and (b)(7)(C) were properly used to redact the signature of the staff member who interviewed Mr. Petrucelli.  This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff member's signature.  This was |

| | | | | | appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 136 | 82 (one page) | Form:  Intake Screening.  May 7, 2009 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP again concedes that (b)(7)(F) should not have been used to redact Mr. Petrucelli's answer to the question:  "ARE YOU A CIM CASE?"  This is question #3 on the inmate interview portion of the form.  This redaction was undone, and a copy of this corrected page was sent to Mr. Petrucelli.<br><br>(b)(7)(F) was properly used to redact Mr. Petrucelli's responses to interview questions other than Question ## 1 & 3.  The responses to these questions, regardless of what the responses are, could reasonably be expected to endanger the life or safety of any individual.<br><br>Exemptions (b)(6) and (b)(7)(C) were properly used to redact the signature of the staff member who interviewed Mr. Petrucelli.  This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff member's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 137 | 83 (one page) | Form:  Intake Screening.  February 14, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP again concedes that (b)(7)(F) should not have been used to redact Mr. Petrucelli's answer to the question:  "ARE YOU A CIM CASE?"  This is question #3 on the inmate interview portion of the |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | form. This redaction was undone, and a copy of this corrected page was sent to Mr. Petrucelli.<br><br>(b)(7)(F) was properly used to redact Mr. Petrucelli's responses to interview questions other than Questions ## 1 & 3. The responses to these questions, regardless of what the responses are, could reasonably be expected to endanger the life or safety of any individual.<br><br>Exemptions (b)(6) and (b)(7)(C) were properly used to redact the name of the Counselor who interviewed Mr. Petrucelli. This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document. No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff member's name. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 138 | 84 (one page) | Form: Intake Screening. October 21, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP again concedes that (b)(7)(F) should not have been used to redact Mr. Petrucelli's answer to the question: "ARE YOU A CIM CASE?" This is question #3 on the inmate interview portion of the form. This redaction was undone, and a copy of this corrected page was sent to Mr. Petrucelli.<br><br>(b)(7)(F) was properly used to redact Mr. Petrucelli's responses to interview questions other than Questions ## 1 & 3. The responses to these |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | questions, regardless of what the responses are, could reasonably be expected to endanger the life or safety of any individual.<br><br>Exemptions (b)(6) and (b)(7)(C) were properly used to redact the signature of the staff member who interviewed Mr. Petrucelli.  This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff member's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 139 | 85 (one page) | Form:  Intake Screening.  September 10, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP again concedes that (b)(7)(F) should not have been used to redact Mr. Petrucelli's answer to the question:  "ARE YOU A CIM CASE?"  This is question #3 on the inmate interview portion of the form.  This redaction was undone, and a copy of this corrected page was sent to Mr. Petrucelli.<br><br>(b)(7)(F) was properly used to redact Mr. Petrucelli's responses to interview questions other than Questions  ## 1 & 3.  The responses to these questions, regardless of what the responses are, could reasonably be expected to endanger the life or safety of any individual.<br><br>Exemptions (b)(6) and (b)(7)(C) were properly used to redact the name of the Counselor who |

| | | | | | interviewed Mr. Petrucelli.  This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff member's name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 140 | 86 (one page) | Form:  Intake Screening.  December 1, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP again concedes that (b)(7)(F) should not have been used to redact Mr. Petrucelli's answer to the question:  "ARE YOU A CIM CASE?"  This is question #3 on the inmate interview portion of the form.  This redaction was undone, and a copy of this corrected page was sent to Mr. Petrucelli.<br><br>(b)(7)(F) was properly used to redact Mr. Petrucelli's responses to interview questions other than Questions ## 1 & 3.  The responses to these questions, regardless of what the responses are, could reasonably be expected to endanger the life or safety of any individual.<br><br>Exemptions (b)(6) and (b)(7)(C) were properly used to redact the signature of the Counselor who interviewed Mr. Petrucelli.  This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy. |

| | | | | | | (b)(7)(F) was also used with the privacy exemptions on the BOP Counselor's signature. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|---|
| 141 | 87 (one page) | Form: Intake Screening. October 31, 2002 | WIP | | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP again concedes that (b)(7)(F) should not have been used to redact Mr. Petrucelli's answer to the question: "ARE YOU A CIM CASE?" This is question #3 on the inmate interview portion of the form. This redaction was undone, and a copy of this corrected page was sent to Mr. Petrucelli.<br><br>(b)(7)(F) was properly used to redact Mr. Petrucelli's responses to interview questions other than Questions ## 1 & 3. The responses to these questions, regardless of what the responses are, could reasonably be expected to endanger the life or safety of any individual.<br><br>Exemptions (b)(6) and (b)(7)(C) were properly used to redact the signature of the Counselor who interviewed Mr. Petrucelli. This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document. No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP Counselor's signature. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |

| 142 | 88 (one page) | SENTRY report:  Inmate Discipline Data | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this record, the processor used the privacy exemptions to redact the names of the DHO and the victim in Mr. Petrucelli's disciplinary case.  These individuals have substantial privacy interest in having their identifier withheld from release of this law enforcement document.  There is no offsetting public interest in the identifiers; therefore, the scales tip in favor of privacy.<br><br>With regard to the name of the DHO, (b)(7)(F) was properly used with the privacy exemptions.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 143 | 89 (one page) | SENTRY Education Transcript | RIF | N/A | N/A |
| 144 | 90 (one page) | Notice:  USP Lewisburg Special Housing Unit Procedures.  March 5, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | Exemptions (b)(6) and (b)(7)(C) were properly used to redact the signature of the staff member who witnessed Mr. Petrucelli's signature on this notice.  This staff member has a strong privacy interest in having his/her identifier excluded from the release of this law enforcement document.  No public benefit would accrue from the release of this information; therefore, the scales tip in favor of privacy.<br><br>(b)(7)(F) was also used with the privacy exemptions on the staff member's signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 145 | 91 (one page) | Administrative Detention Order.  February 1, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This document memorializes the restriction of an inmate to the SHU under administrative detention.  Inmates under administrative detention have more privileges than inmates held in the SHU under |

| | | | | | disciplinary segregation.  See 28 C.F.R. § 541.22. Here the processor used the privacy exemptions to redact the name of the Lieutenant who wrote the order and the name of the Senior Officer Specialist who witnessed the receipt of the order.  These third-party officers have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these officers.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the very real safety concerns that arise from working in prison. |
|---|---|---|---|---|---|
| 146 | 92 (one page) | Memo:  Administrative Detention.  March 3, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This document provided further information to Mr. Petrucelli concerning the reason for his restriction to the SHU under administrative detention status. Here the processor used (b)(6) and (b)(7)(C) to redact the name and signature of the Captain who wrote the memo.  The Captain has a substantial privacy interests in not having his identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the name of the Captain.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of this BOP staff member.  This reflects the very real safety risks that arise from working in prison. |
| 147 | 93 (one page) | Form:  Special Housing Unit Record.  March 9-10, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This document is also known as a "Form 292."  It is a daily log of activity in the SHU.  It reflects whether an inmate ate meals, whether he took a |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | shower, whether a Physician's Assistant checked on the inmate, and other matters.  On this form, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the officer who admitted the inmate to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the grave safety risks that arise from working in prison. |
| 148 | 94 (one page) | Form:  Special Housing Unit Record.  March 5-8, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the officer who admitted the inmate to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |

| 149 | 95 (one page) | Form:  Special Housing Unit Record.  July 28-30, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, (b)(6) and (b)(7)(C) were used to redact:  the name of a caseworker, the name of the officer who admitted the inmate to the SHU, the signatures of Physician's Assistant who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |
| 150 | 96 (one page) | Form:  Special Housing Unit Record.  July 21-27, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the officer who admitted the inmate to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |

| 151 | 97 (one page) | Form:  Special Housing Unit Record.  July 14-20, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |
| 152 | 98 (one page) | Form:  Special Housing Unit Record.  July 7-13, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |

| 153 | 99 (one page) | Form: Special Housing Unit Record. June 30-July 6, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact: the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge. These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |
| --- | --- | --- | --- | --- | --- |
| 154 | 100 (one page) | Form: Special Housing Unit Record. June 23-29, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact: the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge. These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |

| 155 | 101 (one page) | Form: Special Housing Unit Record. June 16-21, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact: the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge. These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |
| 156 | 102 (one page) | Form: Special Housing Unit Record. June 9-15, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact: the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge. These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |

| 157 | 103 (one page) | Form:  Special Housing Unit Record.  June 2-8, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |
| 158 | 104 (one page) | Form:  Special Housing Unit Record.  May 26-June 1, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |

| 159 | 105 (one page) | Form: Special Housing Unit Record. May 19-25, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact: the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge. These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |
| 160 | 106 (one page) | Form: Special Housing Unit Record. May 12-18, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact: the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge. These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |

| 161 | 107 (one page) | Form:  Special Housing Unit Record.  May 5-11, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |
| 162 | 108 (one page) | Form:  Special Housing Unit Record.  April 28-May 4, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |

| 163 | 109 (one page) | Form: Special Housing Unit Record. April 21-27, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members. <br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |
| 164 | 110 (one page) | Form: Special Housing Unit Record. April 14-20, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members. <br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |

| 165 | 111 (one page) | Form: Special Housing Unit Record. April 7-13, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact: the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge. These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |
| 166 | 112 (one page) | Form: Special Housing Unit Record. March 31-April 6, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact: the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge. These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |

| 167 | 113 (one page) | Form:  Special Housing Unit Record.  March 24-30, 2018 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.

(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |
| 168 | 114 (one page) | Form:  Special Housing Unit Record.  March 17-23, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.

(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |

| 169 | 115 (one page) | Form:  Special Housing Unit Record.  March 10-16, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members. (b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |
|---|---|---|---|---|---|
| 170 | 116 (one page) | Form:  Special Housing Unit Record.  March 3-9, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members. (b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |

119

| 171 | 117 (one page) | Form: Special Housing Unit Record. February 24-March 2, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact: the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge. These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |
| 172 | 118 (one page) | Form: Special Housing Unit Record. February 17-23, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact: the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge. These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record. There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members. This reflects the risks to physical safety that arise from working in prison. |

| 173 | 119 (one page) | Form:  Special Housing Unit Record.  February 10-16, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, the signature of an officer who changed the relevant cell number, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |
| 174 | 120 (one page) | Form:  Special Housing Unit Record.  February 1-2, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |

121

| 175 | 121 (one page) | Form: Special Housing Unit Record. February 3-9, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Form 292, the processor used (b)(6) and (b)(7)(C) to redact:  the name of a caseworker, the name of the Lieutenant who admitted Mr. Petrucelli to the SHU, the signatures of Physician's Assistants who did rounds, and the signatures of the officers in charge.  These third-party staff members have substantial privacy interests in not having their identifying information disclosed in this law-enforcement record.  There is no offsetting public interest in revealing the names of these staff members.<br><br>(b)(7)(F) was also used with the privacy exemptions to protect the names of these BOP staff members.  This reflects the risks to physical safety that arise from working in prison. |
| 176 | 122 (one page) | Form: Special Housing Review. March 11, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form recounts Mr. Petrucelli's restriction to the SHU at USP Lewisburg and his release to general population three days later.  (b)(6) and (b)(7)(C) were used to redact the name of the staff member who did the initial review and the name of the staff member who approved Mr. Petrucelli's release into the general population.  The staff members involved have substantial privacy interests in having their names redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the staff members' identities.<br><br>(b)(7)(F) was also used to redact the staff members' identities.  This was apt in the light of the risks to physical safety faced by corrections workers. |

| 177 | 123 (one page) | Form: Special Housing Unit Review. June 14, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form recounts Mr. Petrucelli's restriction to the SHU at MDC Brooklyn from May 24-June14, 2002. (b)(6) and (b)(7)(C) were used to redact the name and signatures of the SHU Lieutenant and the Captain.  These staff members have substantial privacy interests in having their names redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the staff members' identities.<br><br>(b)(7)(F) was also used to redact the staff members' identities.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 178 | 124 (one page) | Form: Special Housing Unit Review.  May 17, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form recounts Mr. Petrucelli's restriction to the SHU at MDC Brooklyn from April 26-May 17, 2002.  (b)(6) and (b)(7)(C) were used to redact the name and signatures of the SHU Lieutenant and the Captain.  These staff members have substantial privacy interests in having their names redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the staff members' identities.<br><br>(b)(7)(F) was also used to redact the staff members' identities.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 179 | 125 (one page) | Form: Special Housing Unit Review.  April 26, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form recounts Mr. Petrucelli's restriction to the SHU at MDC Brooklyn from April 5-26, 2002. (b)(6) and (b)(7)(C) were used to redact the name and signatures of the SHU Lieutenant and the Captain.  These staff members have substantial privacy interests in having their names redacted from this law enforcement document.  Conversely, |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | there is no countervailing public benefit in releasing the staff members' identities.

(b)(7)(F) was also used to redact the staff members' identities.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 180 | 126 (one page) | Form:  Special Housing Unit Review.  March 29, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form recounts Mr. Petrucelli's restriction to the SHU at MDC Brooklyn from March 3-29, 2002.  (b)(6) and (b)(7)(C) were used to redact the name and signatures of the SHU Lieutenant and the Captain.  These staff members have substantial privacy interests in having their names redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the staff members' identities.

(b)(7)(F) was also used to redact the staff members' identities.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 181 | 127 (one page) | Form:  Special Housing Unit Review.  March 2, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form recounts Mr. Petrucelli's restriction to the SHU at MDC Brooklyn from February 15-March 2, 2002.  (b)(6) and (b)(7)(C) were used to redact the name and signatures of the SHU Lieutenant and the Captain.  These staff members have substantial privacy interests in having their names redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the staff members' identities.

(b)(7)(F) was also used to redact the staff members' identities.  This was apt in the light of the risks to physical safety faced by corrections workers. |

| 182 | 128 (one page) | Form: Special Housing Unit Review. February 4, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form memorializes Mr. Petrucelli's continued restriction to the SHU at MDC Brooklyn following a review conducted on February 5, 2002. (b)(6) and (b)(7)(C) were used to redact the name and signatures of the SHU Lieutenant and the Captain. These staff members have substantial privacy interests in having their names redacted from this law enforcement document. Conversely, there is no countervailing public benefit in releasing the staff members' identities.<br><br>(b)(7)(F) was also used to redact the staff members' identities. This was apt in the light of the risks to physical safety faced by corrections workers. |
| 183 | 129 (one page) | Form: Special Housing Unit Review. July 26, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form memorializes Mr. Petrucelli's continued restriction to the SHU at MDC Brooklyn following reviews on July 19 and July 26, 2002. (b)(6) and (b)(7)(C) were used to redact the name and signatures of the SHU Lieutenant and the name of the Captain. These staff members have substantial privacy interests in having their names redacted from this law enforcement document. Conversely, there is no countervailing public benefit in releasing the staff members' identities.<br><br>(b)(7)(F) was also used to redact the staff members' identities. This was apt in the light of the risks to physical safety faced by corrections workers. |
| 184 | 130 (one page) | Form: Special Housing Unit Review. July 12, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form memorializes Mr. Petrucelli's continued restriction to the SHU at MDC Brooklyn following reviews from June 21 to July 12, 2002.. (b)(6) and (b)(7)(C) were used to redact the name and signatures of the SHU Lieutenant and the name of |

| | | | | | the Captain.  These staff members have substantial privacy interests in having their names redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the staff members' identities.<br><br>(b)(7)(F) was also used to redact the staff members' identities.  This was apt in the light of the risks to physical safety faced by corrections workers. |
|---|---|---|---|---|---|
| 185 | 131 (one page) | Form:  Cell Inspection.  Approximately February 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, the SHU officer graded Mr. Petrucelli's cell condition and sanitation.  (b)(6) and (b)(7)(C) were used to redact the signature of the SHU Officer.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the staff member's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 186 | 132 (one page) | Form:  Inmate Work Performance Rating.  March 26, 2016 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |

| 187 | 133 (one page) | Form:  Inmate Work Performance Rating.  September 28, 2015 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 188 | 134 (one page) | Form:  Inmate Work Performance Rating.  November 23, 2015 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 189 | 135 (one page) | Form:  Inmate Work Performance Rating.  October 31, 2015 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 190 | 136 (one page) | Form:  Inmate Work Performance Rating.  December 28, 2015 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 191 | 137 (one page) | Form:  Inmate Work Performance Rating.  January 25, 2015 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the printed name and the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifiers redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 192 | 138 (one page) | Form:  Inmate Work Performance Rating.  December 22, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the printed name and the signature of the supervisor.  This staff member has a substantial privacy interest in having |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | his/her identifiers redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 193 | 139 (one page) | Form:  Inmate Work Performance Rating.  November 24, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the printed name and the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifiers redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 194 | 140 (one page) | Form:  Inmate Work Performance Rating.  October 26, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |

| 195 | 141 (one page) | Form:  Inmate Work Performance Rating.  September 28, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the printed name and the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifiers redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 196 | 142 (one page) | Form:  Inmate Work Performance Rating.  August 31, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the printed name and the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifiers redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 197 | 143 (one page) | Form:  Inmate Work Performance Rating.  July 20, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the printed name and the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifiers redacted from this law enforcement document.  Conversely, there is no |

|  |  |  |  |  | countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
|---|---|---|---|---|---|
| 198 | 144 (one page) | Form:  Inmate Work Performance Rating. June 23, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 199 | 145 (one page) | Form:  Inmate Work Performance Rating. May 31, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 200 | 146 (one page) | Form:  Inmate Work Performance Rating. April 27, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 201 | 147 (one page) | Form:  Inmate Work Performance Rating. March 30, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 202 | 148 (one page) | Form:  Inmate Work Performance Rating. February 24, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the printed name and the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifiers redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 203 | 149 (one page) | Form:  Inmate Work Performance Rating. January 26, 2014 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.  (b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 204 | 150 (one page) | Form:  Inmate Work Performance Rating. December 29, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.  (b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 205 | 151 (one page) | Form:  Inmate Work Performance Rating. October 28, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the printed name and the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifiers redacted from this law |

| | | | | | enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
|---|---|---|---|---|---|
| 206 | 152 (one page) | Form:  Inmate Work Performance Rating.  November 23, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the printed name and the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifiers redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 207 | 153 (one page) | Form:  Inmate Work Performance Rating.  September 30, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |

| 208 | 154 (one page) | Form: Inmate Work Performance Rating. August 26, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance. (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor. This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document. Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity. This was apt in the light of the risks to physical safety faced by corrections workers. |
| --- | --- | --- | --- | --- | --- |
| 209 | 155 (one page) | Form: Inmate Work Performance Rating. July 31, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance. (b)(6) and (b)(7)(C) were used to redact the initials, printed name, and signature of the supervisor. This staff member has a substantial privacy interest in having his/her identifiers redacted from this law enforcement document. Conversely, there is no countervailing public benefit in releasing the supervisor's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity. This was apt in the light of the risks to physical safety faced by corrections workers. |
| 210 | 156 (one page) | Form: Inmate Work Performance Rating. April 22, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance. (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor. This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document. Conversely, there is no countervailing public benefit in releasing the supervisor's identity. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 211 | 157 (one page) | Form:  Inmate Work Performance Rating.  December 16, 2012 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the initials and signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifiers redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.

(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 212 | 158 (one page) | Form:  Inmate Work Performance Rating.  March 3, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this form, Mr. Petrucelli's staff supervisor graded Mr. Petrucelli's work performance.  (b)(6) and (b)(7)(C) were used to redact the signature of the supervisor.  This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the supervisor's identity.

(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 213 | 159 (one page) | Form:  Inmate Work Waiver.  January 3, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This form records that Mr. Petrucelli was advised that, as a pretrial inmate, he was not required to work a prison job.  (b)(6) and (b)(7)(C) were used to redact the signature of the staff member who witnessed Mr. Petrucelli's execution of the form. |

| | | | | | This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the staff member's identity.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
|---|---|---|---|---|---|
| 214-215 | 160 (two pages) | Program Review Report (Initial Classification). March 12, 2003. | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This document records staff findings or inmate goals with regard to inmate programming in areas such as payment of fines and restitution, education, and release preparation.  (b)(6) and (b)(7)(C) were used to redact the initials of the unit team members who developed or approved the plan.  These staff member have substantial privacy interests in having their identifiers redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the identities of these staff members.<br><br>(b)(7)(F) was also used to redact the staff members' identities.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 216 | 161 (one page) | Notice to Inmate.  March 19, 2003 | RIF | N/A | N/A |
| 217 | 162 (one page) | Release Preparation Checklist (undated) | RIF | N/A | N/A |
| 218 | 163 (one page) | Release Preparation Assessment.  March 13, 2003 | RIF | N/A | N/A |

| 219 | 164 (one page) | Administrative Remedy Response. January 15, 2016 | RIF | N/A | N/A |
|-----|----------------|--------------------------------------------------|-----|-----|-----|
| 220 | 165 (one page) | Inmate Request to Staff. January 5, 2016 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inmate correspondence concerning Mr. Petrucelli's visitation rights, (b)(6) and (b)(7)(C) were used to redact the name of the staff member who was tasked with responding to Mr. Petrucelli. This staff member has a substantial privacy interest in having his/her identifier redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the identity of this staff member.<br><br>(b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 221 | 166 (one page) | Form:  Visitor Information. December 17, 2015 | WIF | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the personally-identifiable information (PII) of a third party seeking to visit Mr. Petrucelli in prison.  The prospective visitor has a strong privacy interest in having her PII withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>The processor used (b)(7)(F) to redact the reason a visit was required to be behind glass because of an entrance test result.  Other documents in this file reveal that Mr. Petrucelli and the visitor were informed that behind-glass visits were required at that time.  The BOP concedes that this information should be released.  An additional release is not needed; however, because a correction and a release |

| | | | | | | were made following an OIP remand that rendered BOP FOIA request 2017-02392.  See below. |
|---|---|---|---|---|---|---|
| 222 | 167 (one page) | Notification of Rejection of Publication.  April 15, 2015 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | The BOP concedes that the signature of the Acting Warden should have been released.  A copy of this page with this redaction removed was given to Mr. Petrucelli. |
| 223 | 168 (one page) | Inmate Correspondence. March 20, 2013 | RIF | N/A | N/A |
| 224 | 169 (one page) | Inmate Correspondence. March 12, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this inmate correspondence, (b)(6) and (b)(7)(C) were used to redact the name of a prospective visitor and the name of a Correctional Counselor.  These individuals have substantial privacy interests in having their identifiers redacted from this law enforcement document.  Conversely, there is no countervailing public benefit in releasing the identities of these individuals.  (b)(7)(F) was also used to redact the staff member's identity.  This was apt in the light of the risks to physical safety faced by corrections workers. |
| 225 | 170 (one page) | Inmate Correspondence. October 7, 2013 | RIF | N/A | N/A |
| 226 | 171 (one page) | Memo:  Attorney Visit. September 6, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This memo was prepared following the approval of a contact visit between Mr. Petrucelli and his attorney.  (b)(6) and (b)(7)(C) were used as authority to redact the name of Mr. Petrucelli's attorney, the name of a BOP Complex Captain, and the name of a Unit Manager.  All of these individuals have privacy interests in having their names withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information.  While the public needs to know that inmates have access to |

| | | | | | legal services, the release of this information does not add to the public's understanding.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff names. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 227 | 172 (one page) | Correspondence: Attorney Visit. September 4, 2013 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this correspondence, an attorney representing Mr. Petrucelli asks for a visit. (b)(6) and (b)(7)(C) were invoked as authority to redact the name and other PII of Mr. Petrucelli's attorney and the name of the Unit Manager. These individuals have substantial privacy interests in having their names withheld from the release of this law enforcement document. There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff name. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 228 | 173 (one page) | Inmate Request to Staff. May 17, 2013 | RIF | N/A | N/A |
| 229 | 174 (one page) | FOIA Request. October 18, 2010 | WIP | (b)(6), (b)(7)(C) | An inmate's FOIA correspondence is not typically part of an inmate's Central File. It is unclear why this was included in the correspondence section. In this FOIA request, Mr. Petrucelli sought information from BOP files concerning two named FBI Agents. (b)(6) and (b)(7)(C) were invoked as authority to redact the names of these agents.<br><br>Although this is a BOP agency record, it is not a law enforcement record. 5 U.S.C. § 552(b)(7). To show |

| | | | | | that documents were compiled for law enforcement purposes, the BOP needs to establish a rational nexus between a record and one of the agency's law enforcement duties.  The BOP's core mission is to protect all persons charged with or convicted of offenses against the United States, as well as the law enforcement staff and the community.  A FOIA request, even one that targets law-enforcement agents, does not qualify.  Therefore exemption (b)(7)(C) was improperly used here.

Nevertheless, exemption (b)(6) does apply to this record.  It is a "similar file" as described by the statute.  The next question is whether the release of the agents' names would constitute a clearly unwarranted invasion of personal privacy.

These agents have a substantial privacy interest in having their names withheld from the release of this document.  The FOIA request reveals that the information sought concerns an escort conducted in 2002, sixteen years ago.  To the extent this information was public at the relevant time, it is now practically obscure.

 The agents were line-level law enforcement agents conducting a routine prisoner transport.  Nothing about their positions or duties diminishes their privacy expectations.  In fact, prisoner or detainee transport is, as a matter of safety and security, carried out with great discretion.  Courts have concluded that (b)(6) protects the identity information of certain law enforcement officers, and |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| | | | | | FBI agents have been found to have substantial privacy expectations in their names and addresses. It is important to note that the processor redacted only the agents names, and released intact the other search parameters and circumstances Mr. Petrucelli described.<br><br>There is no public benefit in releasing the agents' identifying information.  Thus, the scales tip in favor of privacy.  No new information needs to be released. |
| 230 | 175 (one page) | E-mail Correspondence: FOIA Search.  September 28, 2011 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this correspondence, which is not typical of the type found in an inmate's Central File, a FOIA processor asks institution staff to conduct a search for documents in response to Mr. Petrucelli's FOIA request # 2011-01572.  The processor used (b)(6), (b)(7)(C), and (b)(7)(F) to redact BOP staff identifiers and a direct line telephone number.<br><br>This is not a law enforcement record for the same reasons stated immediately above concerning document 174, Bates page 229.  Thus, only (b)(6) is properly applied to this record.  The question is whether the release of the redacted information would cause a clearly unwarranted invasion of privacy.<br><br>For the same reasons stated above, the BOP staff members have a substantial privacy interest in having their identifiers (and a direct-contact telephone number) withheld from release.  The public interest here is how the BOP handles FOIA requests, and the identifiers excised add nothing to |

| | | | | | the public's knowledge.  Therefore, the scales tip in favor of privacy, and no further release is necessary. |
|---|---|---|---|---|---|
| 231 | 176 (one page) | Inmate Request to Staff. March 9, 2011 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This document is essentially a request by Mr. Petrucelli for information that will facilitate an attorney visit.  (b)(6) and (b)(7)(C) were used as authority to redact the name of Mr. Petrucelli's attorney and the names and signature of a BOP staff member who responded to Mr. Petrucelli.  These individuals have a privacy interest in having their names withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information.  While the public needs to know that inmates have access to legal services, the release of this information does not add to the public's understanding.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff names/signatures.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 232 | 177 (one page) | Inmate Request to Staff. October 5, 2010 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Request to Staff , (b)(6) and (b)(7)(C) were used as authority to redact the name of Mr. Petrucelli's Correctional Counselor.  The Counselor has a substantial privacy interest in having his/her name withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information.  While the public needs to know that staff are responsive to inmate queries, the release of this identifying information does not add to the public's understanding. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(7)(F) was also used with the privacy exemptions on the Counseor's name and signature. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 233 | 178 (one page) | Inmate Request to Staff. November 21, 2008 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Request to Staff, (b)(6) and (b)(7)(C) were used as authority to redact the name of a BOP staff member who responded to the Request. The privacy exemptions were also used on the names of three of Mr. Petrucelli's approved visitors. The staff member and the visitors have substantial privacy interests in having their names withheld from the release of this law enforcement document. There is no public benefit in releasing this identifying information.

(b)(7)(F) was also used with the privacy exemptions on the Counseor's name and signature. This was appropriate in the light of the threats to physical safety inherent with working in a prison.

(b)(7)(F) was also used on the names of two of Mr. Petrucelli's three named visitors. The BOP concedes that this was a misapplication of the exemption; however, now new information must be released. |
| 234 | 179 (one page) | Memo: Approved Official Visit. December 27, 2007 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this memo, (b)(6) and (b)(7)(C) were used as authority to redact the name and signature of a Unit Manager and the name and direct phone line of Mr. Petrucelli's attorney. The staff member and the visitor have substantial privacy interests in having their names and contact information withheld from the release of this law enforcement document. |

| | | | | | There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 235 | 180 (one page) | Memo: Approved Visit. July 25, 2007 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this memo, (b)(6) and (b)(7)(C) were used as authority to redact the name and signature of a Unit Manager and the name and direct phone line of Mr. Petrucelli's attorney. The staff member and the visitor have substantial privacy interests in having their names and contact information withheld from the release of this law enforcement document. There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature. This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 236 | 181 (one page) | Inmate Request to Staff. November 22 (year not stated) | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this this Request to Staff, (b)(6) and (b)(7)(C) were used as authority to redact the name of a BOP staff member who responded to the Request. The privacy exemptions were also used on the names of two of Mr. Petrucelli's approved visitors. The staff member and the visitors have substantial privacy interests in having their names withheld from the release of this law enforcement document. There is no public benefit in releasing this identifying information. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | (b)(7)(F) was also used with the privacy exemptions on the Counselor's name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 237 | 182 (one page) | Memo:  Approved Legal Visit.  August 3, 2006 | WIP | | (b)(6), (b)(7)(C), (b)(7)(F) | On this memo, (b)(6) and (b)(7)(C) were used as authority to redact the name and signature of a Unit Manager and the name and direct phone line of Mr. Petrucelli's attorney.  The staff member and the visitor have substantial privacy interests in having their names and contact information withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 238 | 183 (one page) | Memo:  Approved Legal Visit.  March 9, 2006 | WIP | | (b)(6), (b)(7)(C), (b)(7)(F) | On this memo, (b)(6) and (b)(7)(C) were used as authority to redact the name and signature of a Unit Manager, the name and direct phone line of Mr. Petrucelli's attorney, and the name of an investigator.  The staff member and the visitors have substantial privacy interests in having their names and contact information withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |

| 239 | 184 (one page) | Inmate Request to Staff. September 22, 2005 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this this Request to Staff, (b)(6) and (b)(7)(C) were used as authority to redact the name of a BOP staff member who responded to the Request.  The privacy exemptions were also used on the names of three of Mr. Petrucelli's approved visitors.  The staff member and the visitors have substantial privacy interests in having their names withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Counselor's name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 240 | 185 (one page) | Memo:  Approved Legal Visit.  September 9, 2005 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this memo, (b)(6) and (b)(7)(C) were used as authority to redact the name and signature of a Unit Manager, the names and direct phone lines of two of Mr. Petrucelli's attorneys.  The staff member and the visitors have substantial privacy interests in having their names and contact information withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 241 | 186 (one page) | Memo:  Approved Legal Visit.  August 6, 2005 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this memo, (b)(6) and (b)(7)(C) were used as authority to redact the name and signature of a Unit Manager and the name and office address of Mr. Petrucelli's attorney.  The staff member and the |

| | | | | | visitor have substantial privacy interests in having their names and contact information withheld from the release of this law enforcement document. There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
|---|---|---|---|---|---|
| 242 | 187 (one page) | Memo:  Approved Legal Visit.  April 27, 2005 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this memo, (b)(6) and (b)(7)(C) were used as authority to redact the name and signature of a Unit Manager and the name of Mr. Petrucelli's attorney. The staff member and the visitor have substantial privacy interests in having their names withheld from the release of this law enforcement document. There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the Unit Manager's name and signature.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 243 | 188 (one page) | Correspondence:  Inmate-to-Inmate Telephone Call Request.  September 29, 2004 | WIP | (b)(6), (b)(7)(C) | On this letter concerning inmate-to-inmate telephone privileges, (b)(6) and (b)(7)(C) were used to excise the names of the third-party inmate and the deputy superintendent of a New York state correctional facility.  These individuals have substantial privacy interests in having their names withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information. |

| 244 | 189 (one page) | Response to Inmate Request to Staff Member. September 24, 2004 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this Response, (b)(6) and (b)(7)(C) were used as authority to redact the names of a Unit Manager and the name and signature of a Paralegal Specialist. These BOP staff members have substantial privacy interests in having their names withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information.

(b)(7)(F) was also used with the privacy exemptions on the staff members' names.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 245 | 190 (one page) | Inmate Request to Staff Member.  September 7, 2004 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this this Request to Staff, (b)(6) and (b)(7)(C) were used as authority to redact the name of a BOP Unit Manager and another named staff member. These staff members have substantial privacy interests in having their names withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information.

(b)(7)(F) was also used with the privacy exemptions on the staff members' names.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 246 | 191 (one page) | Memo:  Approved Legal Visit.  October 1, 2004 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this memo regarding an approved attorney visit, (b)(6) and (b)(7)(C) were invoked as authority to redact the name and signature of a Unit Manager, the name of Mr. Petrucelli's attorney, and the name of an investigator.  These individuals have substantial privacy interests in having their names withheld from the release of this law enforcement |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | document.  There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 247-258 | 192 (12 pages) | Petrucelli's Criminal Docket Sheet.  June 19, 2003 | WIP | (b)(6), (b)(7)(C) | The BOP concedes that this record is a public record.  Copies of previously-redacted PACER docket sheet pages were released to Mr. Petrucelli with no redactions. |
| 259 | 193 (one page) | Memo:  Conduct of a Visitor.  May 30, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | In this memo, a visiting room officer records the conduct of one of Mr. Petrucelli's approved visitors.  (b)(6) and (b)(7)(C) were invoked as authority to redact the names of a Unit Manager and the Officer.  They were also used to react the name of the third-party visitor.  These individuals have substantial privacy interests in having their names withheld from the release of this law enforcement document.  There is no public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff names.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 260 | 194 (one page) | Form:  Notification to Visitor.  May 19, 2003 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | On this cautionary form regarding visiting room rules, the BOP concedes that no redactions should have been applied to a car license plate number, and the make, model, and color of the car.  In addition, a checklist of prohibited items should not have been redacted.  This page was released to Mr. Petrucelli with these excisions removed. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (b)(6) and (b)(7)(C) were properly used as authority to redact the signature of the visiting room officer and the name, signature, and home address of the third-party visitor.<br><br>(b)(7)(F) was also used with the privacy exemptions on the BOP staff name.  This was appropriate in the light of the threats to physical safety inherent with working in a prison. |
| 261 | 195 (one page) | Pro Se Handwritten Court Order.  October 22, 2002 | WIP | (b)(6), (b)(7)(C) | This handwritten order is not a law enforcement document, and there is no justification to redact the name and possibly forged signature of a federal judge.  This page will be released in full to Mr. Petrucelli. |

FOIA Request 2017-02392  (See Wirth exhibit E).
(OIP Remand from 2016-03369; Bates Page 36; Document 18; Released following remand on January 27, 2017)

| Bates p. # | Doc. # | Description | Treatment | Exemptions | Justification |
|---|---|---|---|---|---|
| 1 | 1 (one page) | Prospective Visitors Letter to BOP Staff. October 22, 2002 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | This document is addressed above at Bates page 36 under Request 2016-03369.  In the release of 2016-03369, the page was withheld in full under (b)(6) and (b)(7)(C).  OIP remanded the document for the release of Mr. Petrucelli's name and register number.<br><br>In the letter, the prospective visitor offers explanations of matters that appeared on the NCIC check.  The privacy exemptions were properly used to redact a staff members name, the visitor's identifiers and the visitor's criminal history, which could be identifying.  Third parties have legitimate |

| | | | | | privacy interests in not appearing in this law enforcement record.  There is no public benefit in releasing the third-party identities and historical narrative.<br><br>Nevertheless, there is information that should have been segregated:  in addition to Mr. Petrucelli's name and register number, the first and last sentences of the letter should have been released because they state the reason for the letter without revealing private, identifying information.  As stated above, this letter was re-processed, further segregated with the non-exempt information revealed, and a copy was sent to Mr. Petrucelli.<br><br>Finally, (b)(7)(F) could have been used with the privacy exemptions on the BOP staff member's name.  This would have been appropriate in the light of the threats to physical safety inherent with working in a prison. |

FOIA Request 2017-03853 (See Wirth exhibit G).
(OIP Remand from 2017-00843; Bates Pages 90, 221; Documents 42, 166; Released following remand on June 11, 2018)

| Bates page # | Doc. # | Description | Withholding | Exemptions | Justification |
|---|---|---|---|---|---|
| 1 | 1 (one page) | Memo:  Inmate to Inmate Correspondence. September 10, 2003 | WIP | (b)(6), (b)(7)(C) | The processor properly applied (b)(6) and (b)(7)(C) to the name of the third-party NY inmate and the name and signature of the NY Correctional Counselor.  These individuals have strong privacy interests in having their identifiers withheld from the release of this law enforcement document.  There is no countervailing public benefit in |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | releasing these identifiers.  <u>See also</u> Request 2017-00843, doc. # 90, Vaughn p. 81-81. |
| 2 | 2 (one page) | Form:  Inmate Visitor Detail.  December 17, 2015 | WIP | (b)(6), (b)(7)(C), (b)(7)(F) | (b)(6) and (b)(7)(C) were used here to protect the PII of a third party seeking to visit Mr. Petrucelli in prison.  They were also used to redact a staff member's initials and the reason the visitor would be restricted to behind-glass visits.  The prospective visitor has a strong privacy interest in having her information withheld from release, and there is no countervailing public benefit in releasing this identifying information.<br><br>(b)(7)(F) was also used on the staff member's initials.  This was appropriate in the light of the risks to physical safety inherent in working in a prison. |