UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **John A. Petrucelli,** | : | |
| **Plaintiff,** | : | |
| v. | : | Civil Action No. 18-0729 (CKK) |
| **Department of Justice,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

Plaintiff, a federal prisoner appearing *pro se*, brought this action to compel the release of records under the Freedom of Information Act ("FOIA"), 5. U.S.C. § 552, by the Bureau of Prisons ("BOP"), and the Executive Office for United States Attorneys ("EOUSA"), both components of the Department of Justice ("DOJ"). Pending is Defendant's Motion for Summary Judgment [Dkt. # 32] as to plaintiff's original and supplemental complaint [Dkt. ## 1, 7] and his second amended complaint [Dkt. # 17]. Plaintiff has opposed the motion [Dkt. ## 36, 38], and defendant has replied [Dkt. #46]. Upon consideration of those filings and the entire record, the Court will grant defendant's motion in part and deny it in part for the reasons explained below.

**I. BACKGROUND**

Plaintiff admits that he has been "utilizing" the FOIA since September 13, 2011, "and subsequently initiating lawsuits."[1] Compl. at 2. In various filings in this case, plaintiff interjects matters that were or could have been decided in his prior case "decided on 1/27/16[.]" Compl. at 5 ¶ 4. Any such matters are beyond the scope of this litigation and will not be

---

[1] *See Petrucelli v. United States Dep't of Justice*, 153 F. Supp. 3d 355 (D.D.C.), *aff'd* No. 16-5042, 2016 WL 5349349 (D.C. Cir. Aug. 22, 2016).

considered. This case concerns subsequent determinations, as documented in defendant's Statement of Material Facts to Which There is No Genuine Issue ("SOF") [Dkt. # 32-1]. In support, defendant has proffered the Declaration of BOP Paralegal Specialist Michelle Wirth [Dkt. # 32-2]; the Declaration of BOP Government Information Specialist Lee-Anne Eichensehr [Dkt. # 32-5]; and the Declaration of Natasha Hudgins, who is an Attorney-Advisor with EOUSA [Dkt. # 32-8], and their respective exhibits.

### A. FOIA Requests to BOP

<u>Request Number 2016-03369 (original release)</u>

By letter dated February 15, 2016, plaintiff requested from BOP "any & all information in which your agency [unintelligible] have records of my name John Petrucelli which may be mixed up as part of a routine investigation with DOJ employees." Ex. A to Wirth Decl. [Dkt. # 32-3 at 1]. On August 8, 2016, BOP released from plaintiff's Inmate Central File 245 responsive pages, 87 of which were redacted; it withheld 149 pages in full. SOF ¶ 9. BOP withheld information under FOIA exemptions 6, 7(C), and 7(F), codified in 5 U.S.C. § 552(b). *Id*.

<u>Request Number 2017-00843 (supplemental release)</u>

Following discussions with DOJ's Office of Information Policy ("OIP") -- the administrative appeal forum for FOIA requesters -- BOP supplemented the foregoing disclosure by releasing on December 8, 2016, "the full remainder of the records in Plaintiff's Central File," consisting of 261 responsive pages. It withheld 193 pages in part and 18 pages in full, pursuant to FOIA exemptions 6, 7(C), and 7(F). SOF ¶ 10.

<u>Request Number 2017-02392 (release following remand)</u>

In response to plaintiff's appeal of the initial release, OIP affirmed BOP's decision with one exception; it remanded the request "for further processing of one [responsive] page[.]" In

addition, OIP "further determined that BOP had conducted an adequate search following the supplemental release performed under 2017-00843." SOF ¶ 11. On remand, BOP "reprocessed the one page of records . . . and released" it to plaintiff in part on January 27, 2017; it withheld information under FOIA exemptions 6 and 7(C). *Id*. ¶ 12.

Request Number 2017-03853 (release following remand of supplemental release)

In response to plaintiff's appeal of the supplemental release, OIP mostly affirmed BOP's decision and search; however, it remanded the request "for further processing of two responsive records." SOF ¶ 13. On remand, BOP "located, reprocessed, and released the [remanded] pages" to plaintiff by letter of June 11, 2018. *Id*. ¶ 14. The two pages were released in part, with information withheld under FOIA exemptions 6, 7(C) and 7(F). *See* Ex. G to Wirth Decl. [Dkt. # 32-3 at 12-13].

Request Number 2018-07612

In a letter dated September 26, 2018, BOP re-released 47 pages that were the subject of the releases above due to "redaction errors" discovered during the preparation of "the Vaughn index for this case." Wirth Decl., Ex. I.

Request Number 2018-06810

In a letter dated August 5, 2018, plaintiff requested "any and all information" pertaining to "incidents" he encountered "with some BOP staff" while incarcerated at the Federal Correctional Institution ("FCI") in Manchester, Kentucky, between 2010 and 2012. Ex. A to Eichensehr Decl. [Dkt. # 32-6 at 1-2]. In its response dated September 5, 2018, BOP determined that "[t]his broad search language" was the subject of request numbers 2016-03369 and 2017-00843 (discussed above), "two other requests that were generated by OIP remands," and this litigation. *Id*. at 3. Consequently, BOP declined to address that part of this request.

BOP acknowledged that the request also included "for the first time . . . specific requests for specific BOP records with defined search parameters" covering "the specific date range of 2010-2012," namely "(1) information concerning a charge that you had a weapon in your cell and were given extra duty, (2) information concerning your family's contact with internal affairs, (3) records concerning a complaint you filed that result[ed] in a meeting with SIS and a transfer, and (4) records of steps you took pursuant to BOP Program Statement 1210.21, <u>Boards of Inquiry and Inquiry Teams</u> (3/9/2000). *Id*. Following a search "using the terms and search parameters referenced in [the] request," BOP located no responsive records, however. *Id*.

<u>Request Number 2018-06812</u>

In a letter also dated August 5, 2018, plaintiff requested records pertaining to his "altercation with another inmate while . . . housed at M.C.C. New York" in 2002. Eichensehr Decl., Ex. B at 5-6. By letter of May 9, 2019, BOP released five responsive pages, four of which contained redactions under FOIA exemptions 6 and 7(C). *Id*. at 7.

<u>Request Number 2018-06820</u>

In a letter dated August 6, 2018, plaintiff requested records pertaining to his transfer from USP Canaan to FCI Manchester in June 2010. SOF ¶ 32; Eichensehr Decl., Ex. B at 9-10. By letter of December 10, 2018, BOP released two responsive pages in part, withholding information under FOIA exemptions 6 and 7(C).

<u>Request Numbers 2018-06906 and 2019-03001 (on remand)</u>

In a letter also dated August 6, 2018, plaintiff requested records pertaining to his transfer from FCI Manchester to FCI Allenwood in May 2012, including why he was not transferred to "what he believed would be his next residence McKean F.C.I." Eichensehr Decl., Ex. D at 13-14. By letter of October 11, 2018, BOP released two responsive pages in part, withholding

4

information under FOIA exemptions 6 and 7(C). *Id*. at 15-16. In response to plaintiff's appeal, OIP remanded the request "for a further search for additional responsive records." *Id*. at 22. By letter of March 29, 2019, BOP released an additional eight responsive pages, five of which contained redactions pursuant to FOIA exemptions 6, 7(C), and 7(F). *Id*. at 24.

Request Number 2018-07118

In a letter dated August 21, 2018, plaintiff requested "another copy of the final denial" of a request in "2010 or so . . . for information sometime in 2011-onward" regarding an "administrative detention order on or about 1-28-02." Eichensehr Decl., Ex. E at 25. By letter of August 31, 2018, BOP released one responsive page in full. *Id*. at 26.

Request Number 2018-07116

In a letter dated August 20, 2018, plaintiff requested records pertaining to his "'intake screening' interview" in January 2002, which he had "previously received" but was requesting "again." Eichensehr Decl., Ex. F at 27. By letter of April 9, 2019, BOP released three responsive pages, two of which contained redacted material under FOIA exemptions 6, 7(C) and 7(F). *Id*. at 28-29.

Request Number 2018-07115

In a letter also dated August 20, 2018, plaintiff requested records "regarding a cell or cells he spent two or three days in at MDC Brooklyn," SOF ¶ 36, which plaintiff had "previously received" but believed was missing a page, Eichensehr Decl., Ex. G at 30. By letter of September 24, 2018, BOP released two responsive pages in part, withholding information under FOIA exemptions 6 and 7(C). *Id*. at 31.

### B. FOIA Requests to EOUSA

Request Number 2017-00301

In a letter to EOUSA dated October 24, 2016, plaintiff requested "copies of the untranscribed transcripts and tape recording of [his] criminal trial arraignment," which occurred on February 1, 2002, in the Southern District of New York ("SDNY"). Hudgins Decl., Ex. A [Dkt. # 32-9 at 1]. EOUSA acknowledged the request by letter of November 28, 2016, as seeking first-party records and public records. EOUSA characterized the request seeking "records from one or more field offices, and involv[ing] many voluminous records and/or requir[ing] consultation with another agency/component with a substantial interest in the subject-matter and therefore fall[ing] within 'unusual circumstances'[.]" *Id.*, Ex. B. Consequently, EOUSA extended the statutory response time.

By letter of November 16, 2017, EOUSA informed plaintiff that a search of the U.S. Attorney's Office for the SDNY for "a tape recording of your arraignment" had located no responsive records. "That record," EOUSA explained, "is maintained at the courthouse where you were arraigned and not at the U.S. Attorney's Office for the Southern District of New York. Furthermore, the District does not have a transcript of your arraignment, which is all that we would have been able to provide to you." *Id.*, Ex. C. OIP affirmed EOUSA's decision by letter of March 16, 2018. *Id.*, Ex. D.

Request Number 2018-002349

In a letter to EOUSA dated January 21, 2018, plaintiff requested "copies of all payments made by me to [the] U.S. Attorney's Office of the Southern District," including "the dates they were made and the amount of each." Hudgins Decl., Ex. E. By letter of July 3, 2018, EOUSA released "two pages . . . in full," and it further informed plaintiff that "the official records

regarding restitution payments are judicial records, and can be retrieved from the Court where the proceedings took place." *Id.*, Ex. I.

## II. LEGAL STANDARD

The FOIA authorizes a district court only "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). This case, like a "vast majority" of FOIA cases, *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011), can be decided on summary judgment.

Summary judgment is appropriate upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, the Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *accord Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Rather, a plaintiff "must point to evidence sufficient to put the Agency's good faith into doubt." *Ground Saucer*, 692 F.2d at 771. Otherwise, "'uncontradicted, plausible

7

affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.'" *Schoenman v. FBI*, 841 F. Supp. 2d 69, 80 (D.D.C. 2012) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (alteration omitted)).

On summary judgment, the district court must conduct a "de novo" review of the record, 5 U.S.C. § 552(a) (4)(B), "to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure." *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citation and internal quotation marks omitted). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

### III. DISCUSSION

The Court will first identify the issues that are properly before it. Despite the detailed advisements plaintiff received about opposing defendants' dispositive motion, *see* June 25, 2019 Order [Dkt. # 33], his opposition is non-compliant and wide-ranging. In his initial opposition [Dkt. # 36], for example, plaintiff states as his "main argument for disclosure" that he "has endured a 'bombardment' of different harassments by the DOJ while trying to exercise his constitutionally protected rights to seek disclosure of these documents which would confirm his position of Governmental corruption." Opp'n at 1. Plaintiff does not specify the documents, but he "believes that he has laid out enough facts to support his request for [their] disclosure . . . "[s]ince [his] initial arrival into the DOJ on January 28, 2002." *Id*. at 2. As indicated above, this action is not that expansive. More importantly, plaintiff's historical narrative is misplaced

8

because "a requester's personal need for information is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA." *Engelking v. Drug Enf't Admin.*, 119 F.3d 980, 980-81 (D.C. Cir. 1997); *see also Stonehill v. IRS*, 558 F.3d 534, 538-39 (D.C. Cir. 2009) (noting that "when a document must be disclosed under FOIA, it must be disclosed to the general public and the identity of the requester is irrelevant to whether disclosure is required.") (citations omitted); *Anderson v. Fed. Bureau of Prisons*, 2011 WL 346079, at *1 (D.D.C. Feb. 3, 2011) (finding prisoner's "dissatisfaction with his transfer from one federal prison facility to another . . . irrelevant to his FOIA claim").

After much frustration, the Court discerns specific to this case challenges to BOP's and EOUSA's searches for records and BOP's delay in complying with OIP's remand. *See* Opp'n at 8-11; Decl. of John A. Petrucelli [Dkt. # 36 at 20-23]; Second Petrucelli Decl. [Dkt. # 36 at 24-26]. The timeliness of BOP's responses is inconsequential at this stage of the proceedings because "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform." *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *see accord Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) (noting that "because the report was located in the work file and subsequently disclosed, the issue is moot for purposes of this FOIA action") (citation omitted)).

Plaintiff also alleges for the first time that BOP has maintained inaccurate records in violation of the Privacy Act, and he seeks monetary damages under 5 U.S.C. § 552a(g)(1)(C). *See* Opp'n at 14-17. But "[i]t is well-established in this district that a plaintiff cannot amend his Complaint in an opposition to a defendant's motion for summary judgment," *Jo v. District of Columbia*, 582 F. Supp. 2d 51, 64 (D.D.C. 2008), or motion to dismiss, *Durand v. District of*

9

*Columbia*, 38 F. Supp. 3d 119, 129 (D.D.C. 2014) (citing cases). Consequently, the purported Privacy Act claim is not before this Court, and it will not be addressed. The Court turns now to the issues at hand, namely the disputed searches followed by its independent review of the claimed exemptions.

### A. Adequacy of the Searches

Although the primary focus under FOIA is the agency's actual withholding of records, an inadequate search may constitute an improper withholding as well. *Maydak v. U.S. Dep't. of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003). *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 147 (D.C. Cir. 2016) (reversing district court's dismissal after examining "whether the agency's refusal to undertake a search of the records of the director's private email account amounts to a 'withholding,' and specifically, an 'improper' one"). When an agency's search is challenged, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The Court may rely on an agency's "reasonably detailed [declarations], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby*, 920 F.2d at 68) (internal quotation marks omitted)). Such declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (citation and internal quotation marks omitted). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary

judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (footnote and citations omitted).

**1. BOP's Search**

Defendant has provided a comprehensive description of BOP's record systems and identified the "most frequently" utilized systems when responding to a FOIA request. *See* SOF ¶¶ 1-7 (citing Declarations of Wirth and Eichensehr). Relevant here is the Inmate Central Records System, which houses the "Central File" of each BOP prisoner and "is generally maintained at the inmate's current institution." SOF ¶ 7; Wirth Decl. ¶ 16 ("The files are stored alphabetically by inmate name in secure fireproof cabinets in the unit team offices of the housing unit where the inmate lives."). At the relevant times, plaintiff was "housed at FCI Allenwood in White Deer, Pennsylvania." Eichensehr Decl. ¶ 14.

A prisoner's Central File "is divided into six sections," covering sentencing data; classification and parole material; mail, visits and property information; conduct and work reports; release processing; and general correspondence. Wirth Decl. ¶ 4. Documents include the prisoner's judgment and commitment order, presentence investigation report, sentence computations, transfer orders, requests for transfers, and approved visiting lists. They also include documents pertaining to disciplinary proceedings and inmate requests to staff. *Id*. ¶ 5. "Although there is a structure to the [central] files, there is no machine-searchable digital version," and the "paper" file "can easily run to thousands of pages if an inmate serves a long sentence." SOF ¶ 4 (citing Eichensehr Decl. ¶ 10). A prisoner may "look at and make copies of the majority of his Central File materials," but "[d]iscipline records, such as Unit Discipline Committee and Discipline Hearing Officer packets" are "maintained together in [a] Privacy Folder only if a portion of the investigation or other discipline record contains non-disclosable

materials"; otherwise, [c]opies of all releasable documents [are] placed together in the disclosable section" of the Central File. *Id*. ¶¶ 5-6.

In response to plaintiff's request about records pertaining to himself, BOP followed the practice of construing it "as a request for [Plaintiff's] Central File, including the FOIA-exempt Privacy Folder," since "the Central File is the comprehensive record that is most likely to render responsive documents." Wirth Decl. ¶ 14. BOP ultimately searched plaintiff's Central File "for records concerning 'the name John Petrucelli,'" *Id*.; *see id*. ¶ 20 (noting that OIP "directed that all sections of John Petrucelli's Central File be searched and processed, not just the FOIA Exemption Section."). The Court agrees that BOP "conducted an adequate search once [plaintiff's] entire Central File was gathered for processing." Wirth Decl. ¶ 25. And although the initial search "was admittedly too narrow[,] . . . the error was cured when the BOP made a supplemental release of the remainder of [plaintiff's] Central File in 2017-00843." *Id*. ¶ 25.

As for plaintiff's requests for records concerning matters that he suggested had occurred before his arrival at FCI Allenwood but were not located in his Central File, the declarant followed up with requests for additional searches by staff at local offices that the FOIA requests suggested may have responsive records. *See* Eichensehr Decl. ¶ 17 (describing additional searches for records pertaining to FCI Manchester in 2010-12 of "the SIS Department of FCI Manchester and . . . BOP's Office of Internal Affairs in Washington, D.C.," both of which provided a "no records response"); *id*. ¶¶ 18-23 (describing additional searches regarding plaintiff's fight with another inmate in 2002 at MCC New York); *id*. ¶¶ 27-30 (describing additional searches for records pertaining to the Manchester to Allenwood transfer). BOP's declarant reasonably explains why certain records were not located, *see id*. ¶ 17, and avers that

12

"the BOP had searched all areas reasonably likely to render records responsive to [plaintiff's] request" concerning each of the foregoing matters. Eichensehr Decl. ¶¶ 17, 23, 28.

Plaintiff counters that it "is apparent . . . that [the] searchers were centered around the Central File Department's data bases, which is loaded with FOIA exemptions." Decl. ¶ 4 [Dkt. # 36 at 20]. But that asserted fact does not call into question the reasonableness of BOP's search. "When [as here] a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'" *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (quoting *Oglesby,* 920 F.2d at 68). And when it was appropriate, BOP in fact searched beyond plaintiff's Central File. Consequently, the Court will grant summary judgment to defendant on the adequacy of BOP's search for responsive records.

2. **EOUSA's Search**

In challenging EOUSA's search, plaintiff "avers that he believes the EOUSA did not search for . . . audio tapes." Petrucelli Second Decl. ¶ 4 [Dkt. # 36 at 24]. In direct contrast to BOP's declaration, EOUSA's declaration provides sparse information about its search. The only relevant facts are that plaintiff's requests were forwarded to the U.S. Attorney's Office in the Southern District of New York as the location most likely to have responsive records and that "a search for public records" was unfruitful. SOF ¶ 59; *see* Hudgins Decl. ¶ 7. EOUSA's declaration says nothing about the office's filing systems, the search terms that were used, and the type of search that was performed. Therefore, summary judgment on the adequacy of EOUSA's search is denied without prejudice.

### B. Claimed Exemptions

BOP withheld information under FOIA Exemptions 6, 7(C), and 7(F). Plaintiff has not challenged this aspect of defendant's summary judgment motion. Nevertheless, in order to grant summary judgment, the Court must independently assess the propriety of the withholdings. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (noting that the "District Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment") (internal quotation marks and citations omitted)).

In enacting FOIA, Congress "underst[ood] that disclosure of records containing personal details about private citizens can infringe significant privacy interests." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 766 (1989). Under FOIA's personal privacy exemptions 6 and 7(C), relied upon here, records pertaining to third-party individuals typically are exempt from disclosure absent the subject's written authorization or a showing that an overriding public interest exists to compel disclosure. Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects records compiled for law enforcement purposes if the disclosure of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Plaintiff does not dispute that the requested information was compiled for law enforcement purposes, *see* Wirth Decl. ¶¶ 30-32, and he does not dispute BOP's withholdings. The declarations show that BOP properly redacted the names of two FBI agents from one document under FOIA Exemption 6, Wirth Decl. ¶ 29, and third-party information under Exemption 7(C), *id*. ¶¶ 33-36. *See Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) ("As a result of [e]xemption 7(C), FOIA ordinarily does not require disclosure of law enforcement

documents (or portions thereof) that contain private information . . . . [because] privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated.") (citations and internal quotation marks omitted); *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (threshold requirement of exemption 6 is that the requested information "applies to a particular individual").

In assessing an agency's claim under exemption 7(C), the district court must look to the balance of the privacy interests asserted and the public interest in disclosure.[2] *Voinche v. FBI*, 412 F. Supp. 2d 60, 68 (D.D.C. 2006). As a general matter, the identification of an individual "in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987). Therefore, "[a]bsent exceptional circumstances, the balance [of interests] categorically favors withholding the names . . . of third parties," as such information is not probative of an agency's performance of its statutory responsibilities. *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000). Once an agency has shown a logical connection between the withheld information and this exemption, the only relevant question is "whether [plaintiff] has shown government misconduct sufficient to overcome Exemption 7(C)'s protection for personal privacy under the test outlined [Favish]." *Id.* (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)).

Although plaintiff has not challenged defendant's asserted exemptions, he begins his opposition with a generic statement that "disclosure of otherwise alleged 'protected' information may be compelled upon a showing that the public's interest . . . outweighs the privacy interest at stake." Opp'n at 1. Plaintiff then proceeds to complain about governmental corruption and his

---

[2] *See Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004) ("deem[ing] the privacy inquiry of exemptions 6 and 7(C) to be essentially the same").

15

general need for documents "so that he may shed light into the 'systemic corruption' of the DOJ." *Id*. at 2. But under the *Favish* test, plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the [withheld] information is likely to advance that interest." *Favish*, 541 U.S. at 172. Such a showing requires "more than a bare suspicion" of official misconduct; "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id*. at 174. For it is "[o]nly when [such evidence is] produced [that] there [will] exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id*. at 174-75.

Plaintiff's allegations covering his lengthy history of personal encounters with DOJ employees in civil and criminal proceedings, *see* Opp'n at 2-8, are not evidence, and because "[a]llegations of government misconduct are easy to allege and hard to disprove, . . . courts must insist on a meaningful evidentiary showing" before weighing the competing interests. *Favish*, 541 U.S. at 175 (citation internal quotation marks and citation omitted). Furthermore, disclosure of third-party information is disfavored, "particularly . . . when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution." *Blackwell*, 646 F.3d at 41.

BOP has properly justified its withholdings under exemptions 6 and 7(C). *See* Wirth Decl., *Vaughn* Index [Dkt. # 32-4]; Eichensehr Decl,, *Vaughn* Index [Dkt.# 32-7]. Although the Court need not address BOP's withholding of the same third-party information under exemption 7(F), *see Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011), it finds the withholdings justified. *See* Eichensehr Decl. ¶ 46; Wirth Decl. ¶¶ 37-42. Plaintiff has produced no countervailing evidence to preclude summary judgment on BOP's asserted exemptions.

## CONCLUSION

For the foregoing reasons, the Court concludes that defendant is entitled to summary judgment on the claims based on BOP's response to plaintiff's FOIA request but not on those based on EOUSA's response. As to the latter, therefore, defendant's motion will be denied without prejudice. A separate order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

DATE: March 20, 2020